Pablo **SANCHEZ**, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 566, Docket 86–6198.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1986.
Decided March 12, 1987.

---

Edward Cherney, New York City (Breadbar, Garfield & Solomon, P.C., New York City, of counsel), for plaintiff-appellant.

Charles E. Knapp, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before MANSFIELD *, PIERCE, and MAHONEY, Circuit Judges.

PIERCE, Circuit Judge:

Pablo Sanchez appeals from a judgment entered in the United States District Court for the Eastern District of New York (Nickerson, *Judge*) that dismissed his complaint with prejudice following a decision granting the government's motion to dismiss on the ground that the *Feres* doctrine precluded the suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). We reverse.

## BACKGROUND

Appellant, then a private first-class in the United States Marine Corps, suffered serious injuries in an automobile accident on March 10, 1984, while stationed in Hawaii. While appellant was on liberty and riding in the personal car of Corporal Ernest Yracheta, who was driving, the car overturned on a public highway after Yracheta lost control due to a malfunction of the car's cruise control and brakes.[1]

Less than a month before the accident, on February 16, 1984, Yracheta's car had been repaired at the Kaneohe Marine Corps Exchange Service Station (the "Service Station"). The government owns and operates the Service Station, which is staffed by marines and civilians. The repair work included bleeding the brake system and adding brake fluid. Appellant alleges that the

government's employees negligently serviced Yracheta's brakes and thereby caused the accident and appellant's injury.

In July 1985, appellant gave the government notice of his claim for injuries sustained in the accident. *See* 28 U.S.C. § 2675(a). Apparently, the government did not act on the claim. Accordingly, appellant filed a complaint in the district court in February 1986. In May 1986, the government moved to dismiss the action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b), claiming that the notice was insufficient and that the *Feres* doctrine barred appellant's suit. In response, appellant filed an affidavit and submitted other materials related to the sufficiency of the notice given by appellant to the government and to appellant's duty status at the time of the accident. The district court decided to treat the motion as one for summary judgment, *see* Fed.R.Civ.P. 12(c), granted the motion and dismissed the complaint on *Feres* doctrine grounds. This appeal followed, and addresses only the *Feres* issue.

## DISCUSSION

Under the FTCA, a member of the armed services may not sue the United States for injuries that "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. The *Feres* case states three rationales for this holding: (1) the "distinctly federal" character of the relationship between the soldier and the government, *id.* at 143, 71 S.Ct. at 157; (2) the FTCA's purpose of imposing liability on the government as if it were a private individual was not served in the case of a soldier's relationship with government and superior officers, i.e., no similar relationships exist in the private sector, *id.* at 141–42, 71 S.Ct. at 156–57; and (3) Congress' provision of "systems of

---

* Judge Mansfield participated in the oral argument in this case and voted before his death on January 7, 1987, in favor of the disposition reached in this opinion.

1. For the purposes of this opinion, which reviews an order dismissing the action for lack of

jurisdiction under the *Feres* doctrine, we will accept appellant's factual assertions as true. *See Johnson v. United States*, 749 F.2d 1530, 1531 nn.1 & 2 (11th Cir.1985), *aff'd on reh'g*, 779 F.2d 1492 (en banc), *cert. granted*, —— U.S. ——, 107 S.Ct. 59, 93 L.Ed.2d 19 (1986).

simple, certain, and uniform compensation for injuries or death of those in armed services." *Id.* at 144, 71 S.Ct. at 158.

Over the years, *Feres* has been criticized widely by courts and commentators,[2] and the theoretical bases of the doctrine have lost much of their force. *Bozeman v. United States,* 780 F.2d 198, 200 (2d Cir. 1985). *See generally Johnson v. United States,* 749 F.2d 1530, 1532–35 (11th Cir. 1985) (reviewing history and development of *Feres* doctrine and noting "widespread, almost universal criticism" of it), *aff'd on reh'g,* 779 F.2d 1492 (en banc), *cert. granted,* —— U.S. ——, 107 S.Ct. 59, 93 L.Ed.2d 19 (1986). Today, the importance of preserving military discipline, and of protecting military decision-making from the scrutiny of civilian courts, has come to be considered the primary rationale of the *Feres* doctrine. *See Bozeman,* 780 F.2d at 201. This view has been adopted by the Supreme Court, which has indicated that the key questions are "whether the suit requires the civilian court to second-guess military decisions ... and whether the suit might impair essential military discipline." *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985) (citations omitted). Accordingly, our primary duty in this appeal is to determine whether this suit is likely to impair military discipline or second-guess military decisions if the case is allowed to proceed to trial before a civilian court and jury. *Id.; Bozeman,* 780 F.2d at 201–02; *see also Crawford v. Texas Army National Guard,* 794 F.2d 1034, 1035 (5th Cir.1986).

Such second-guessing can occur in various ways. For example, where plaintiffs alleged that the military failed to exert sufficient control over a violent serviceman and failed to warn others that the serviceman was at large, the plaintiffs could not recover for the death of their son at the hands of the serviceman because the suit would call into question such military personnel decisions as "basic choices about the discipline, supervision, and control of a serviceman." *Shearer, supra; see also Bozeman, supra.* And it likely would be improper for a civilian court to second-guess decisions related to the design and use of military hardware and weapons. *See Tozer v. LTV Corp.,* 792 F.2d 403, 405–07 (4th Cir.), *petition for cert. filed,* 55 U.S.L.W. 3337 (U.S. Oct. 23, 1986) (No. 86–674); *In re "Agent Orange" Product Liability Litigation,* 534 F.Supp. 1046, 1054 n. 1 (E.D.N. Y.1982) (Pratt, J.).

Herein, the complaint alleges that the "repairs were performed in a careless and negligent manner by employees of the U.S. [Service Station] and of the U.S. Government, acting within the scope of their employment as such." Complaint ¶ 15. It further alleges that the accident was "caused solely as a result of the negligence of the Defendant, by and through its servants, agents and/or employees at the [Service Station]." Complaint ¶ 18. At this early stage of the case, it is difficult to predict the specifics of plaintiff's theory in this litigation; consequently, it does not seem inevitable to us, on the basis of the record thus far, that military decisions will be questioned. Not unlikely, plaintiff will attempt to show that bleeding brakes is a simple routine and that the mechanic in some fashion failed to perform the procedure properly. This might entitle plaintiff to recover on a theory of *respondeat superior. See McSwain v. United States,* 422 F.2d 1086, 1087–89 (3d Cir.1970). On the present record, it seems unlikely that such a theory would require inquiry into military decisions.

Courts have looked to a number of factors to determine whether the injuries of service members "arise out of or are in the course of activity incident to service" in the armed forces. The principal value of such factors is in aiding a court to assess the extent to which a lawsuit might inter-

---

**2.** *See e.g., Peluso v. United States,* 474 F.2d 605, 606 (3d Cir.) (per curiam), *cert. denied,* 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973); *In re "Agent Orange" Prod. Liab. Litig.,* 580 F.Supp. 1242, 1246–47 (E.D.N.Y.) (Weinstein, Ch. J.), *appeal dismissed,* 745 F.2d 161 (2d Cir.1984); Hitch, *The Federal Tort Claims Act and Military Personnel,* 8 Rutgers L.Rev. 316 (1954); Note, 77 Mich.L.Rev. 1099 (1979); Comment, 44 U.Pitt.L. Rev. 929 (1983); *see also* Note, 50 Fordham L.Rev. 1241, 1251 n. 68 (1982) (citing literature).

fere with military discipline or decision-making. Our assessment below causes us to conclude that this action should not have been dismissed at this preliminary stage. Initially, we note that the accident herein occurred off-base, *see Knecht v. United States,* 242 F.2d 929 (3d Cir.1957); although the conduct causing the injury occurred on base, *see Bozeman, supra,* it was not related to Sanchez or directed toward his duties in any way, *see Knecht, supra.* Indeed, Sanchez was off-duty and engaged in non-duty related activity. *See Parker v. United States,* 611 F.2d 1007 (5th Cir.1980). Unlike the situation in *Bon v. United States,* 802 F.2d 1092 (9th Cir. 1986) (rented canoe), the injury did not arise as a result of Sanchez having taken advantage of some benefit available to him as a member of the armed forces. *See also Hass v. United States,* 518 F.2d 1138, 1141–42 (4th Cir.1975) (riding stable). Rather, the injury arose as a result of appellant's friend, Yracheta, having taken advantage of a benefit of military service. Indeed, the only apparent nexus between Sanchez' injury and his military service was the fact that the car in which he was riding happened to have been owned and driven by his service-member friend and to have been repaired at the Service Station repair shop.

Appellee suggests that *Bozeman* requires us to affirm the ruling of the district court since Sanchez, although off-duty when injured, nevertheless was on active duty status (i.e., not on furlough) and was subject to military discipline. *See* 780 F.2d at 200. We do not believe that *Bozeman* requires a conclusion that a service-member is precluded from bringing suit merely because an injury occurred while on active duty. In *Bozeman,* the service-member's injury arose out of his participation in a social activity along with another serviceman who became drunk and caused an accident. The activity was related to their membership in the United States Army. 780 F.2d at 201. More significantly, in order for the plaintiff to succeed in her suit in *Bozeman,* it was necessary for her to establish that the Army owed a duty of care to her husband as a member of the service and failed to meet it by allowing a fellow service-member to drink to excess at a Non-Commissioned Officers' ("NCO") club. *Id.* at 202. In *Bozeman,* the plaintiff clearly was questioning Army policies in staffing, operating and supervising its NCO clubs and whether the policies were followed by superior officers. Herein, it does not appear on the present record that the district court will find it inevitably necessary to inquire into Marine Corps policies for staffing and operating its auto repair facilities. We therefore reverse the dismissal and remand this action for further proceedings.

We conclude with a caution. It is not our intention to foreclose the applicability of the *Feres* doctrine herein. If, as discovery proceeds and the issues are sharpened, the district court finds it necessary to inquire into military decision-making in any significant way, it might then be appropriate to reconsider the application of *Feres* to this case.

Reversed and remanded.