Pablo SANCHEZ, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 1127, Docket 89–6026.

United States Court of Appeals,
Second Circuit.

Argued May 8, 1989.

Decided June 29, 1989.

Edward Cherney (Breadbar & Garfield, New York City, on the brief), for plaintiff-appellant.

Varuni Nelson, Asst. U.S. Atty., Brooklyn (Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, on the brief), for defendant-appellee.

Before KEARSE, CARDAMONE, and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Pablo Sanchez appeals from a final judgment of the United States District Court for the Eastern District of New York, Eugene H. Nickerson, *Judge*, dismissing his complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.

§§ 2671–2680 (1982), following our remand in *Sanchez v. United States,* 813 F.2d 593 (2d Cir.1987) ("*Sanchez I* "), *modified,* 839 F.2d 40 (2d Cir.1988) (per curiam) ("*Sanchez II* "), and our modification in *Sanchez II.* Sanchez sought $3 million in damages from the United States for injuries he suffered while a member of the armed forces. The district court granted the government's motion for summary judgment dismissing the complaint for lack of jurisdiction under the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). For the reasons below, we affirm.

## I. BACKGROUND

Most of the factual background of this litigation is set forth in *Sanchez I,* familiarity with which is assumed. Sanchez brought the present action against the government to recover for injuries he suffered in an automobile accident in 1984 while he was a private in the United States Marine Corps. He was "on liberty" and was a passenger in an automobile owned and driven by Marine Corps Corporal Ernest Yracheta when the car overturned on a public highway after Yracheta lost control due to an alleged malfunction of the car's cruise control mechanism and brakes. Less than a month earlier, the car had been repaired at a service station on the Marine Corps base; the station was owned and operated by the government and was staffed by both marines and civilians. Sanchez contended that his injuries were the result of negligent servicing of Yracheta's car by service station personnel.

### A. *The Original Dismissal and the Decisions in* Sanchez I *and* II

The district court dismissed the complaint for lack of subject matter jurisdiction on the authority of *Feres* and *Bozeman v. United States,* 780 F.2d 198, 200 (2d Cir. 1985) ("*Bozeman* "). The *Feres* doctrine generally prohibits FTCA suits against the government by members of the armed services for injuries that "arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159. Its three rationales are (1) the "distinctively federal" character of the relationship between the government and the members of its armed forces, (2) the existence of generous statutory disability and death benefits for servicemen, and (3) the general propensity of claims against the government by service members for injuries incurred incident to service to involve the judiciary in sensitive military matters at the expense of military discipline and effectiveness. In *Bozeman,* we ruled that military personnel who are on liberty or on leave are generally still on "active duty" status and that their suits against the government are barred by the *Feres* doctrine unless they were also on furlough at the time they were injured. The district court noted that Sanchez did not show he had been on furlough, and it concluded that the *Feres* factors required dismissal of his complaint.

Sanchez appealed, contending that, because his injury occurred off the marine base and while he was on liberty, the *Feres* doctrine did not apply. In *Sanchez I,* we reversed, noting that over the years the *Feres* doctrine had been much criticized and the rationale for its application had been substantially narrowed. We concluded that, in light of the Supreme Court's decision in *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), "the key questions are 'whether the suit requires the civilian court to second-guess military decisions ... and whether the suit might impair essential military discipline.'" *Sanchez I,* 813 F.2d at 595 (quoting *United States v. Shearer,* 473 U.S. at 57, 105 S.Ct. at 3043). Though the government urged us to affirm on the basis of *Bozeman,* we noted that in that case

the service-member's injury arose out of his participation in a social activity along with another serviceman who became drunk and caused an accident. The activity was related to their membership in the United States Army.... More significantly, in order for the plaintiff to succeed in her suit in *Bozeman,* it was necessary for her to establish that the Army owed a duty of care to her husband as a member of the service and

failed to meet it by allowing a fellow service-member to drink to excess at a Non–Commissioned Officers' ("NCO") club.... In *Bozeman,* the plaintiff clearly was questioning Army policies in staffing, operating and supervising its NCO clubs and whether the policies were followed by superior officers. Herein, it does not appear on the present record that the district court will find it inevitably necessary to inquire into Marine Corps policies for staffing and operating its auto repair facilities.

*Sanchez I,* 813 F.2d at 596. We concluded that the dismissal here had been premature:

At this early stage of the case, it is difficult to predict the specifics of plaintiff's theory in this litigation; consequently, it does not seem inevitable to us, on the basis of the record thus far, that military decisions will be questioned.

*Id.* at 595. We therefore remanded to the district court for further proceedings, though we noted that it was "not our intention to foreclose the applicability of the *Feres* doctrine herein" if the court found it necessary to inquire into military decision-making in any significant way. *Id.* at 596.

Some months later, in *Sanchez II,* we recalled our mandate for further consideration in light of the Supreme Court's then-recent decisions in *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), and *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed. 2d 550 (1987), which undercut the rationale of *Sanchez I* by ruling that the "military discipline" rationale should not be the only focus of inquiry. The Supreme Court in *Johnson* held that a suit involving injuries that were "incident to service" was barred by the *Feres* doctrine even if the complaint alleged negligence by the government's civilian employees rather than military employees, and it reaffirmed the vitality of the "three broad rationales underlying the *Feres* decision." *United States v. Johnson,* 107 S.Ct. at 2064–69. Accordingly, we revised our remand to the district court as follows:

In light of *Johnson* and *Stanley,* we find that a clarification of our prior opinion is in order. We withdraw the conclusion in our prior opinion that the military discipline rationale "has come to be considered the primary rationale of the *Feres* doctrine." Nonetheless, we adhere to our view that, at this preliminary stage in the proceedings, it remains to be seen whether Sanchez's injuries "arise out of or are in the course of activity incident to service." Accordingly, we grant the motion to recall our prior mandate, reverse the decision of the district court, and remand this action for further proceedings in light of the "three broad rationales" underlying *Feres,* and to determine whether the appellant's injuries "arise out of or are in the course of activity incident to service."

*Sanchez II,* 839 F.2d at 42.

B. *The District Court's Decision on Remand*

On remand, the government renewed its motion for summary judgment. In support of the motion, it submitted, *inter alia,* documents and affidavits from military personnel detailing the operation of the auto repair station, the extent of Sanchez's injury, which prevented full use of one arm and resulted in a 10% disability, and the government benefits to which this disability entitled him. In a Memorandum and Order dated November 25, 1988 ("Decision"), the district court granted the motion. 701 F.Supp. 374. Analyzing the facts before it in light of the three traditional *Feres* factors, the court concluded that all three factors pointed toward application of the doctrine.

As to the federal character of the relationship, the court found that Sanchez was on active-duty status at the time of the accident. It noted that Sanchez's contention that he was not on active-duty status was based only on the fact that he was then on liberty. In rejecting this contention, the court relied on our ruling in *Bozeman* that "military personnel who are on liberty or on leave are still on active duty status." Decision at 4. The court noted that Sanchez's "active status itself indi-

cates that his injuries arose out of or were suffered in the course of activity incident to service." *Id.* In addition, the court found that other factors suggested that Sanchez's injuries arose out of service-related activity, to wit, the facts that Sanchez alleged negligent servicing of Yracheta's car at the base service station, that use of the base service station was limited to military personnel and civilians connected with the military mission, and that Yracheta was an authorized patron of the station because of his status as a Marine.

As to the manner in which Sanchez had been treated and compensated as a result of his injuries, the court noted that he had received free health care after sustaining his injuries. The Office of Naval Disability Evaluation had found that Sanchez was "unfit for duty because of physical disability due to the accident, that his disability might be permanent, and that he incurred the disability in the line of duty." *Id.* at 2. Sanchez had been awarded $4,759.20 in disability severance pay and was receiving $133 per month as service-related compensation for his injuries. In addition, he remained eligible for free lifetime hospital care and medical treatment at Veterans Administration facilities and would be entitled to various preferences in insurance, loans, and employment. The court concluded that Sanchez's military status had "afforded him substantial benefits not available to civilians." *Id.* at 5.

As to the relationship of the present claim to military decisionmaking, having previously observed that the base service station was not a public facility but was open only to servicemen and civilians connected with the military mission, the court noted the Marine Corps' control over operation of the station:

> The military service established Standing Operating Procedures for the [station], and it issued the work order made out to Corporal Yracheta for the repairs that plaintiff alleges were negligently done. A determination of whether there was such negligence might well require review of decisions of the military such as those involving the staffing, training and supervision of the mechanics at the base

service station and the procurement of equipment and spare parts. As the Supreme Court noted: "Even if military negligence is not specifically alleged in a tort action, a suit based upon service-related activity necessarily implicates military judgments and decisions that are inextricably intertwined with the conduct of the military mission."

*Id.* at 5–6 (quoting *United States v. Johnson,* 107 S.Ct. at 2069).

The court concluded that Sanchez's suit against the government under the FTCA was barred, and it dismissed the complaint. This appeal followed.

## II. DISCUSSION

On this appeal, Sanchez contends principally (1) that the district court failed to follow the mandate of *Sanchez II,* which invited a factual inquiry into the question of whether Sanchez's injuries arose out of or were in the course of activity incident to military service, and (2) that the court's conclusion that his injuries were incident to military service was based solely on the characterization of Sanchez's status as active-duty status. For the reasons below, we reject all of his contentions.

■ First, we see no procedural flaw in the district court's proceedings on remand nor any failure to follow our *Sanchez II* mandate. On the prior appeals we found that the initial dismissal of the complaint was premature. We did not state that there were issues of fact to be tried but only that "at this preliminary stage in the proceedings, it remain[ed] to be seen" whether Sanchez's injuries occurred in the course of activity incident to military service. On remand, the government made a new motion for summary judgment and produced a number of documents and affidavits that provided new details as to, *inter alia,* the treatment of Sanchez following his injuries and the operation of the service station on the base. The government's factual presentation was not controverted by Sanchez, and the augmented record provided the district court with sufficient facts with which to analyze the rela-

tionship between the injuries claimed by Sanchez and all three factors underlying the *Feres* doctrine.

■ Second, we reject Sanchez's contention that the district court's finding that his injury arose out of activity incident to his military service was based solely on the classification of Sanchez's status as active-duty status. The court focused on Sanchez's status in part in order to analyze the first *Feres* factor, *i.e.*, the nature of the relationship between the government and the plaintiff; and given Sanchez's position as a United States Marine and his active-duty status at the time of the accident, it is obvious that his relationship to the government was distinctively federal. Neither this factor nor Sanchez's active-duty status was the sole premise for the court's conclusion that the injury arose out of or in the course of activity incident to military service. Rather, the court went on to consider such factors as the character of the Marine Corps' operation of the facility in reaching its final conclusion.

■ Finally, given our prior decision in *Bozeman*, we conclude that the district court, in light of the record before it, properly found that the three *Feres* factors required dismissal of Sanchez's claim. *Bozeman* involved an FTCA claim against the government by the widow of Johnny Bozeman, a soldier who died when the car in which he was a passenger left the highway, collided with a house, and overturned. Prior to the accident, Bozeman and the driver of the car had been drinking at the non-commissioned officers' ("NCO") club at the Army depot where they were stationed. Both were off duty on that day but were not on furlough. Mrs. Bozeman contended that the Army breached its obligations to Bozeman by serving drinks to the driver of the car after he was obviously drunk. The district court dismissed the complaint on the ground that it was barred by the *Feres* doctrine, and we affirmed.

Though Mrs. Bozeman argued that the *Feres* doctrine did not apply because Bozeman was off duty at the time of the injury and the injury occurred off the Army base, we disagreed for several reasons. Though

the accident occurred off the Army base, the alleged breach of duty occurred on the base. The NCO club at which the alleged negligence occurred was not open to the public; Bozeman was entitled to be there only because he was a member of the Army, held an appropriate rank, and was on active-duty status. The NCO club was an instrumentality of the Army designed to " 'perform an essential government function,' ... and 'provide for the comfort, pleasure, contentment ... of service personnel.' " 780 F.2d at 199 n. 2 (quoting Army regulations). In operating the club, the Army hired civilian personnel, and it was to these employees that the primary negligence was attributed. Thus, we noted that

> The evidence needed to establish that the Army owed Johnny Bozeman a duty of care when he was in the NCO club would require Army officers to testify about their policies in staffing and running the NCO club.... If a duty of care toward Johnny Bozeman could be established, then demonstrating a breach of the duty would entail proof that the Army's employees either failed to enforce regulations by overlooking certain behavior or neglected to enforce rules formulated with the unique demands of military morale and base discipline in mind. A defense would require Army officers to justify employment decisions related to hiring the bartender.

780 F.2d at 202.

The facts of the present case are not meaningfully distinguishable from those of *Bozeman*. As revealed in the documents submitted by the government in the district court, the Marine Corps maintained the automobile repair facility, which was not open to the public but only to military personnel and certain civilians connected with the base, in recognition of the fact that "[t]he automobile plays a highly vital role in the life of the military patron and his or her family." *Standing Operating Procedures for the Exchange Automotive Services Section Activities* ¶ 1000.1. Further, one of the Corps' goals in providing service station facilities was "[t]o realize

sufficient income from each facility to finance it's [*sic*] operation and to contribute the proportionate share of profit, determined by the Exchange Officer, to support the welfare and recreation of the Commands supported by this Exchange." *Id.* ¶ 1001.2. The Corps hired the employees of the repair facility, and its operations were overseen by the base's Exchange Officer, who gave detailed directions on matters ranging from hours of operation, to internal repairs of engines and transmissions, to gauge stick measurement of gallonage. Employees were required to be familiar with the Exchange Officer's instructions and were referred for additional information to Army, Navy, and Air Force manuals.

These facts persuade us that establishment of Sanchez's claim would require Marine Corps officers to testify about their policies in hiring employees for the repair station and in running the station. Further, since one goal of operation of the facility was to "realize sufficient income" to contribute to the support of the base's welfare and recreation programs, defense of the present action might require military officials to seek to justify decisions that balanced quality of service against the financial needs of other base activities.

Thus, the parallels between this case and *Bozeman* are striking. In both cases, the injured serviceman had been on liberty but not on furlough. In both, the alleged negligence occurred on the base, and the injury occurred off the base. In both, the alleged negligence occurred at a facility operated by the military with the use, at least in part, of civilian personnel. In both, the facility at which the alleged negligence occurred was open only to a limited class of military or military-connected patrons, not to the public. In both, the alleged negligence occurred in connection with an activity that was recreational rather than occupational. In both, the military branch had given explicit recognition to the value of facilitating relaxation and recreation. *See also Hass v. United States*, 518 F.2d 1138, 1141 (4th Cir.1975) ("Recreational activity provided by the military can reinforce both morale and health and thus serve the over-

all military purpose."). And in both, defense of the suit could require military officers to defend employment and other decisions related to certain of their policies.

We held in *Bozeman* that the *Feres* doctrine barred Mrs. Bozeman's FTCA claim against the government. We can see no principled basis on which to conclude that Sanchez's claim is not similarly barred.

### CONCLUSION

The judgment of the district court is affirmed.