Karen Kay WAKE, Plaintiff–Appellant,

v.

UNITED STATES of America; Sergeant Kenneth Jay Etringer, U.S.M.C.; Colonel E.A. Smyth, U.S.M.C., in both official and individual capacities; Commander Maynard Robinson, U.S.N., in both official and individual capacities; Colonel A.S. Weber, U.S.M.C., in both official and individual capacities; Lieutenant Timothy B. Spratto, U.S.N., in both official and individual capacities; and Other Unknown Officers of the United States Navy, in both official and individual capacities, Defendants–Appellees,

Norwich University, and Unknown Members of the Faculty of Norwich University, in both official and individual capacities, Defendants–Appellants.

Nos. 1260, 1261, Dockets 95–6230, 95–6241.

United States Court of Appeals,
Second Circuit.

Argued April 11, 1996.

Decided July 9, 1996.

Jeffrey N. Gelfon, Roxbury, Vermont, for plaintiff–appellant.

Allan R. Keyes, Ryan Smith & Carbine, Ltd., Rutland, Vermont, for defendants–appellants.

Helen M. Toor, Assistant United States Attorney for District of Vermont, Burlington, Vermont (Charles R. Tetzlaff, United States Attorney for the District of Vermont, on the brief), for defendants–appellees.

\* The Honorable James B. Moran, United States District Judge for the Northern District of Illinois, sitting by designation.

Before: KEARSE and ALTIMARI, Circuit Judges, and MORAN,\* District Judge.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Karen Kay Wake ("Wake") appeals from a judgment of the United States District Court for the District of Vermont (Parker, *C.J.*),\*\* dismissing all claims against the federal defendants-appellees—the United States, several members of the United States Navy and Marine Corps, and unknown officers of the United States Navy (the "federal defendants")—under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. Wake sought damages from the federal defendants, as well as from Norwich University and members of the faculty of Norwich University (collectively "Norwich University"), under a combination of federal and state claims for injuries she suffered while a student at Norwich University and a member of the United States Navy Reserve Officers Training Corps (the "NROTC"). The district court granted the federal defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), dismissing all claims against them for lack of subject matter jurisdiction under the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (the "*Feres* doctrine"). In addition, defendants-appellants Norwich University appeal from a judgment of the United States District Court for the District of Vermont (Murtha, *J.*), (1) denying their motion to amend their answer and (2) granting federal defendants-appellees' motion for entry of partial judgment. For the reasons set forth below, we affirm.

## BACKGROUND

This case arises from an automobile accident in which Wake sustained serious and permanent injuries while travelling as a passenger in a vehicle owned by the NROTC program at Norwich University and driven by defendant-appellee Marine Corps Sergeant Kenneth Jay Etringer ("Etringer"). At the time of the accident on February 20,

\*\* Judge Parker became a member of the Second Circuit Court of Appeals on October 11, 1994.

1992, Wake was a third-year student and a member of the NROTC at Norwich University. While a member of the NROTC, Wake remained an enlisted, "inactive" member of the Navy Reserves, subject to reactivation in the event she withdrew from the NROTC. Wake was training to be an officer in the United States Navy.

The accident occurred on Interstate 89 in New Hampshire, as Wake and the other passengers were returning from the Naval Air Station in Brunswick, Maine, where she and other NROTC students had gone for a precommissioning physical examination. The physical examination was required to qualify as a flight navigator, a position Wake voluntarily sought.

For purposes of the trip, on February 5, 1992, Wake was issued a "Temporary Additional Duty Travel Order" by the Commanding Officer of the NROTC unit assigning her to temporary duty and authorizing her to travel to the military clinic in Brunswick, Maine. The order stated that the reason for travel was a "precommissioning physical" and served to detach Wake "from one duty station to another"—in this instance, from Norwich University to Brunswick Naval Air Station and back. The order itself explicitly stated that there would be no cost to the government in executing the order and no reimbursement to Wake for any expenses incurred in connection with the trip to Maine. On February 19, 1992, Wake travelled to Maine, and received the scheduled physical on the following day. On the return trip to Vermont, the accident in which Wake was seriously injured occurred.

Because of Wake's previous service in the Navy, the Department of Veterans Affairs ("VA") assigned Wake a 100% disability rating, resulting in monthly VA "service-connected compensation benefits" of $2,000 per month on January 5, 1993. The VA determined that the injury occurred "while on active duty for training status." Wake also receives free medical care from the VA.

In January 1993, Wake filed a claim for federal Workers' Compensation under the Federal Employee Compensation Act ("FECA"), 5 U.S.C. §§ 8101–8193. The Department of Labor awarded Wake workers' compensation for her injuries, pursuant to FECA, on the ground that she was injured in the line of duty. Wake later learned that her award of benefits under FECA barred her right to proceed with an FTCA claim due to FECA's exclusive remedy provisions, see 5 U.S.C. § 8116(c). Accordingly, Wake appealed the award of benefits under FECA, arguing that the benefits were improperly awarded under the circumstances. On June 3, 1994, the Department of Labor agreed with Wake and reversed its earlier decision awarding her FECA benefits. The Department concluded that Wake's travel for a physical did not constitute travel to or from training as required by statute. As a result, Wake was no longer barred from pursuing her FTCA claim.

On January 11, 1994, Wake commenced an action in the United States District Court for the District of Vermont against the United States, members of the United States Navy and Marines, Norwich University, unknown officers of the United States Navy, and members of the faculty of Norwich University under a combination of federal and state claims. For purposes of this action, there are two different groups of defendants: Norwich University and the federal defendants.

Count I alleged that Etringer, acting in his official capacity, drove the Navy vehicle in a negligent and reckless manner. Wake sought damages for Etringer's alleged negligence directly from the United States under the FTCA. Count II alleged that because the Navy sponsored the NROTC program jointly with Norwich University, Norwich University was negligent in failing to adequately train and supervise Etringer. Wake sought damages against Norwich University under Vermont law.

Counts III and IV alleged that Norwich University and the federal defendants violated Wake's constitutional right to due process under the Fifth Amendment pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and that they were negligent and breached their fiduciary duty to Wake in advising her how to pursue

compensation for her injuries. Wake sought monetary damages of ten million dollars on each count, as well as certain injunctive relief, costs and attorney's fees.

On March 13, 1995, the district court dismissed all claims against the federal defendants on the authority of *Feres*. Wake's claims in Counts II, III, and IV, insofar as they implicate Norwich University and unknown members of the Norwich University faculty, remain pending in the district court. Norwich University moved to amend its answer principally to assert a cross-claim against the federal defendants on March 21, 1995, seeking indemnification for any vicarious liability imposed on the University as a result of Etringer's negligence. Thereafter, the federal defendants moved for entry of partial judgment pursuant to Fed.R.Civ.P. 54(b). On July 21, 1995, the district court denied the University's motion to amend its answer, but granted the federal defendants' motion for entry of partial judgment.

This appeal followed.

## DISCUSSION

On appeal, Wake contends principally that the district court erred in granting the federal defendants' motion under Fed.R.Civ.P. 12(b)(6) and dismissing all claims for relief against the federal defendants under the FTCA for lack of subject matter jurisdiction under the *Feres* doctrine. In addition, Norwich University contends principally that the district court erred in denying its motion to amend its answer to assert an indemnification claim against the federal defendants.

■ As an initial matter, we believe that the proper vehicle for dismissing a *Feres*-barred FTCA claim is a dismissal for lack of subject-matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1). The FTCA was intended as a partial waiver of sovereign immunity. *Feres*, 340 U.S. at 140, 71 S.Ct. at 156. " 'Absent a waiver, sovereign immunity shields the federal Government and its agencies from suit.... [Thus, s]overeign immunity is jurisdictional in nature.' " *Dorking Genetics v. United States*, 76 F.3d 1261, 1264 (2d Cir.1996) (quoting *FDIC v. Meyer*, 510 U.S. 471, ——, 114 S.Ct. 996, 1000, 127

L.Ed.2d 308 (1994)). Because the *Feres* doctrine concerns the waiver of sovereign immunity, *see Feres*, 340 U.S. at 146, 71 S.Ct. at 159, a question of whether a FTCA claim is barred by *Feres* is necessarily one of jurisdiction. *See Sanchez v. United States*, 878 F.2d 633, 634 (2d Cir.1989) ("*Sanchez III*") (*Feres* dismissal for lack of jurisdiction). Accordingly, because of the importance of the jurisdictional issue, *see* Fed R. Civ. P. 12(h)(3), we will treat the Government's Rule 12(b)(6) motion as a jurisdictional challenge under Rule 12(b)(1), *see* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, p. 205 (2d ed.1990).

■ "When reviewing a district court's [Rule 12(b)(1) ] determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo*." *In re Vogel Van & Storage, Inc.*, 59 F.3d 9, 11 (2d Cir.1995). We review the denial of a motion to amend for abuse of discretion. *See Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir.1996) (per curiam).

### (1) *The Feres Doctrine*

■ In *Feres*, the Supreme Court held that the United States is not liable for injuries to members of the military under the FTCA if their "injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. Three rationales underlie the *Feres* doctrine: (1) the "distinctly federal" relationship between the Government and members of its armed forces; (2) the existence of a uniform system of "generous statutory disability and death benefits" for members of the military; and (3) the need to preserve the military disciplinary structure and prevent judicial involvement in sensitive military matters. *See United States v. Johnson*, 481 U.S. 681, 688–691, 107 S.Ct. 2063, 2067–69, 95 L.Ed.2d 648 (1987); *see also United States v. Stanley*, 483 U.S. 669, 682–683, 107 S.Ct. 3054, 3063–64, 97 L.Ed.2d 550 (1987). As we have recently observed, the three broad considerations underlying the *Feres* doctrine permeate the process of assessing whether the totality of the germane facts giving rise to a service member's claim occurred within the purview of a distinctly military sphere of activity or

while a military relationship was in effect. *See Taber v. Maine,* 67 F.3d 1029, 1049; *Sanchez III,* 878 F.2d at 637; *Bozeman v. United States,* 780 F.2d 198, 200–01 (2d Cir. 1985).

■ In examining whether a service member's injuries were incurred "incident to service," the courts consider various factors, with no single factor being dispositive. The individual's status as a member of the military at the time of the incident giving rise to the claim is relevant. *See, e.g., Persons v. United States,* 925 F.2d 292, 296 (9th Cir. 1991) (barring medical malpractice claim because off-duty service member "enjoyed the use of the naval hospital solely by virtue of his status as a serviceman") (internal quotations omitted); *Appelhans v. United States,* 877 F.2d 309, 311–12 (4th Cir.1989) (barring medical malpractice claim of service member on excess leave pending discharge).

The courts have also considered such factors as the relationship of the activity to the individual's membership in the service, as well as the location of the conduct giving rise to the underlying tort claim. *See, e.g., Bozeman,* 780 F.2d at 200–01 (barring claim arising from automobile crash caused by service members' intoxication at a military club even though accident occurred off base while the service member was off duty); *Walls v. United States,* 832 F.2d 93, 95–96 (7th Cir. 1987) (barring claim for injuries sustained while travelling to visit family in airplane leased from military club). Also relevant is whether the activity is limited to military personnel and whether the service member was taking advantage of a privilege or enjoying a benefit conferred as a result of military service. *See, e.g., Sanchez III,* 878 F.2d at 637 (barring claim for negligent servicing of automobile where use of base service station was limited to service members and civilians connected with military mission and suit would involve impermissible civilian inquiry into policies and procedures for operation of military controlled facility).

■ In assessing whether Wake's FTCA claim is barred as incident to military service, we examine the facts before us in light of the three broad rationales underlying the *Feres* doctrine. A brief review of the record portends our ultimate conclusion that Wake's

injury was indeed incurred incident to her military service: (1) Wake was a member of NROTC; (2) Wake was a member of the Naval Reserves; (3) Wake was travelling in a Navy-owned vehicle; (4) the driver of the vehicle was a non-commissioned officer acting within the scope of his employment (5) Wake "and other ROTC cadets" were being transported in the military vehicle, by a non-commissioned officer, "back to Norwich University from a flight physical examination conducted at the Naval Air Station in Brunswick, Maine;" (6) the "purpose of the trip ... was to take a physical examination at the Naval Air Station at Brunswick, Maine to become qualified for flight school and possibly become a flight navigator;" and (7) Wake was issued a "travel order" assigning her to temporary duty and authorizing her travel to the military clinic.

Wake contends on appeal that despite these facts, the circumstances giving rise to her claim did not occur within a distinctly military sphere of activity nor while a military relationship was in effect because (A) as a ROTC cadet she lacked an official military status; (B) her travel to the Naval Air Station for her physical was voluntary; (C) she had to pay for her own food and lodging; (D) she was not on active duty; and (E) under this Court's decision in *Taber,* her military status was not sufficiently connected to the activity she was engaged in when she was injured to support a *Feres* bar of her FTCA action against the government. We address each of Wake's contentions in turn.

### (A) *Lack of Military Status*

Wake contends that the *Feres* doctrine does not apply to her claims because as a member of the NROTC and as an enlisted, inactive member of the Navy Reserves she lacked an official military status at the time of the accident. While this Court has never squarely addressed the official status of an ROTC member, a number of courts have found that cadets in military academies may be barred by *Feres* from bringing FTCA claims if injured incident to military service regardless of their official military status. *See, e.g., Collins v. United States,* 642 F.2d 217, 220–21 (7th Cir.) (*Feres* doctrine applies

to cadets at United States military academies), *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981); *Archer v. United States,* 217 F.2d 548, 551 (9th Cir.1954) (barring claim for cadet's death when cadet was voluntarily on military plane while on leave), *cert. denied,* 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955); *Callis v. Shannon,* 1994 WL 116007 at *2 n. 2 (S.D.N.Y.1994) ("Plaintiff cannot sustain a tort claim against the Army because the Feres doctrine bars such a claim since the actions ... were 'incident to military service' as they occurred while she was a ROTC cadet."). We agree and conclude that Wake was acting in a military capacity at the time of the accident despite the fact that her only official, active military affiliation at the time was that as a member of the NROTC

In addition, numerous circuits have found that individuals on reserve status fall within the *Feres* bar. *See Quintana v. United States,* 997 F.2d 711, 712 (10th Cir.1993) (rejecting argument that "the *Feres* doctrine does not bar [plaintiff's] claim because she was on reserve status, rather than active duty status"); *Duffy v. United States,* 966 F.2d 307, 312 (7th Cir.1992) ("status as a reservist ... unquestionably is a military status"); *Norris v. Lehman,* 845 F.2d 283, 286–287 (11th Cir.1988) (per curiam) (barring NROTC instructor's age-discrimination claim); *Estate of Martinelli v. United States Department of the Army,* 812 F.2d 872, 873 (3d Cir.) (reservist's military status barred FTCA claim for injuries sustained during weekend drill), *cert. denied,* 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 44 (1987); *Mattos v. United States,* 412 F.2d 793, 794 (9th Cir. 1969) (per curiam) (same); *United States v. Carroll,* 369 F.2d 618, 620 (8th Cir.1966) ("There is no doubt that the *Feres* decision applies also to reservists.").

 While Wake maintains that she was nominally a civilian at the time of the accident due to her lack of official military status, this factor is not dispositive. *See Kohn v. United States,* 680 F.2d 922, 926 (2d Cir. 1982) ("civilian status alone is not sufficient to lift the bar under *Feres* "). What is significant is that Wake (1) was injured returning from a military physical examination necessitated by her desire to advance her military career; (2) was in a position to take the precommissioning physical due to her prior military service and her affiliation with the Navy; and (3) was only authorized to be a passenger in the NROTC van due to her affiliation with the Navy. It is clear that regardless of Wake's official military status, the relationship between her and the noncommissioned officer who, in the course of his active duty, transported her in the military vehicle back to Norwich University from a flight physical examination conducted at the Naval Air Station, was at its very essence a military relationship.

**(B)** *Voluntary Nature of Travel*

Wake characterizes her travel to the Naval Air Station for her physical as purely voluntary; specifically, Wake argues that while the ROTC program authorized her travel, it did not order her travel. Such a characterization, however, does not demonstrate that her travel was unrelated to her military status.

Under the federal ROTC statute, voluntary activities that are *authorized* are considered "duty." *See* 10 U.S.C. § 101(d)(7)(B) ("inactive-duty training" means "special additional duties authorized for Reserves ... and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned."). Likewise, the courts have rejected the argument that the voluntary nature of the plaintiff's travel is dispositive. *See, e.g., Carroll,* 369 F.2d at 621 ("numerous cases ... have applied the *Feres* doctrine where servicemen on leave who were free to travel at their will by any mode of transportation they desired, chose to utilize military aircraft"); *Archer,* 217 F.2d at 551 (barring claim for cadet voluntarily flying on military plane); *Fass v. United States,* 191 F.Supp. 367, 369–70 (E.D.N.Y.1961) (barring FTCA claim for death of army officer riding in military aircraft on leave).

Accordingly, the fact that Wake *voluntarily* travelled in a Navy-owned vehicle, driven by a Navy officer, to take a precommissioning examination conducted at the Naval Air Station pursuant to a temporary duty travel

order does not negate the fact that when the accident occurred, a military relationship was in effect. Simply put, Wake was a passenger in the vehicle in her military, rather than civilian, capacity. Thus, despite its voluntary nature, Wake's travel was "incident to service."

#### (C) *Personal Payment For Food and Lodging*

The fact that Wake paid for her own food and lodging is also not inconsistent with a finding that her travel was "incident to service." Section 2110 of Title 10 of the United States Code, which provides for official ROTC military travel, states:

> The Secretary of the military department concerned may transport members of, and designated applicants for membership in, the program to and from installations when it is necessary for them to undergo medical or other examinations.... He *may* also furnish them subsistence, quarters, and necessary medical care, including hospitalization, while they are at, or traveling to or from, such an installation.

10 U.S.C. § 2110(c) (emphasis added). Notably, official payment for food and lodging is neither required by statute nor necessary to establish the travel as "military." Pursuant to this statute, Wake was transported in a Navy vehicle from one duty station (Norwich University) to another (Brunswick Naval Air Station) for a flight physical examination. As the statute makes clear, whether or not Wake paid for her own food and lodging has no bearing upon the military nature of her travel.

#### (D) *Inactive Duty Status*

Wake's contention that her inactive duty status compels a conclusion that she was not engaged in activity incident to military service is equally unpersuasive in light of the significant caselaw to the contrary. *See, e.g., Duffy,* 966 F.2d at 312 ("[plaintiff] argues that *Feres* ... [is] inapplicable to reservists not lawfully on active duty. The dispositive inquiry, however, is not whether [the plaintiff] was lawfully on active duty at the time his claims arose, but whether he 'stood in the

sort of relationship to the [Air Force] at the time of [the incidents in question] that those incidents arose out of activity incident to service'"); *Sanchez III,* 878 F.2d at 637; *Norris,* 845 F.2d at 287; *Mattos,* 412 F.2d at 794; *Carroll,* 369 F.2d at 620–21.

The *Feres* doctrine has been broadly applied to preclude actions by individuals who were injured while taking part in government sponsored social or recreational activities even when the military status of those individuals determined only their right, rather than their duty, to participate in the activities. *See Bozeman,* 780 F.2d at 201 (injury incurred at an NCO club while plaintiff was off duty was "incident to service," because, *inter alia,* he was only entitled to use the NCO club due to his military status). Similarly, Wake was only entitled to travel in the military vehicle because of her affiliation with the Navy.

Moreover, preinduction physicals, which by their nature occur prior to any "active duty" in the military, have also been held to be "incident to service." *See, e.g., Schoemer v. United States,* 59 F.3d 26, 30 (5th Cir.) (inactive reservist's preenlistment physical for National Guard was incident to service), *cert. denied,* —— U.S. ——, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995); *Bowers v. United States,* 904 F.2d 450, 452 (8th Cir.1990) ("there is no question that pre-induction physicals are activities incident to service"); *Hall v. United States,* 528 F.Supp. 963, 966 (D.N.J.1981) (same), *aff'd,* 688 F.2d 821 (3d Cir.1982); *Thompson v. United States,* 493 F.Supp. 28, 31 (W.D.Okla.1980) (preinduction physicals "are required of every individual prior to entrance into the service and were it not for Plaintiff's enlistment in the Navy, said examination would not have occurred"). Moreover, at least one court has held that the very use of military medical facilities, such as the Naval Air Station from which Wake was returning, constitutes *per se* activity "incident to service." *See Antoine v. United States,* 791 F.Supp. 304, 306 (D.D.C.1992) ("use of military medical facilities, by itself constitutes activity 'incident to service' sufficient to invoke the *Feres* doctrine's bar"), *aff'd,* 990 F.2d 1377 (D.C.Cir.1993).

It is clear that the nature of the activity, and not the official duty status of the serviceperson, may be determinative of whether or not an activity is "incident to service." Given that Wake was travelling in a military vehicle, driven by a military officer, in order to take an examination she would have no reason to obtain were she not seeking to advance her military career, it cannot be said that the district court erred in determining that Wake's injuries arose incident to her service. Had she not been a Reservist or a NROTC cadet, she would not have been provided with either military transportation or the opportunity to obtain a precommissioning flight physical at the Naval Station, all of which was incident to her military service.

### (E) *Taber v. Maine*

While Wake suggests on appeal that our recent decision in *Taber v. Maine,* creates a new test for determining the applicability of the *Feres* doctrine, the scope of employment considerations suggested in *Taber* do not come into play in the instant matter. In any event, *Taber* does not and could not change the result in this case, as *Taber* does not in any way alter the reach of the *Feres* doctrine.

As a preliminary matter, our decision in *Taber* adheres to the Supreme Court's "incident to service" test. *See* 67 F.3d at 1050 ("*Feres* bars a claim for injuries that 'arise out of or in the course of activity incident to service'"). Thus, because all the cases discussed above indicate that Wake's travel was "incident to service," Wake's claims are barred.

Moreover, while Wake suggests that *Taber* creates a new "scope of employment" test that presents a close question of the doctrine's applicability in this case, "tortfeasor-related disciplinary considerations" support the district court's application of the *Feres* bar. *See id.* at 1052 (discussing vitality of *Bozeman* and *Sanchez III* outside the application of the "scope of employment" test). In the case before us, as in *Bozeman* and *Sanchez III,* the district court invoked the *Feres* bar, in part, based on tortfeasor-related disciplinary considerations. As we acknowledged in *Taber,* "our focus on tortfeasor-related discipline in both *Bozeman* and *Sanchez III* stemmed primarily from the particular theories of liability that the plaintiffs asserted in those cases"—negligence. *Id.* at 1052. So, too, in this case, Wake alleged that the military officer negligently drove the car in which she was injured and that the NROTC program was negligent in failing to adequately train and supervise Etringer. Thus, as we observed in *Taber,* the " 'defense of the suit[s] could require military officers to defend employment and other decisions related to certain of their policies.'" *Id.* (quoting *Sanchez III,* 878 F.2d at 638). Because this case concerns tortfeasor-related discipline considerations that justify a *Feres* bar that were not present in *Taber,* the scope of employment considerations set forth in *Taber* do not come into play. *See id.* (acknowledging underlying tension between reasoning in *Bozeman* and *Sanchez III* and the scope of employment test "used in deciding this case").

### (F) *Feres' Underlying Rationales*

Finally, consideration of the three broad rationales underlying *Feres* buttresses our conclusion that the district court's application of the *Feres* doctrine was justified. Indeed, as discussed above, the underlying rationales permeate every application of the *Feres* doctrine to the case at hand. Wake's claim falls squarely within the three rationales for invocation of the *Feres* doctrine.

*Feres'* first rationale concerns the federal character of the government's relationship to service members; to the extent that the federal government is liable to Wake, *federal law* should govern the degree to which the government is liable for activities incident to her military service. As discussed exhaustively above, it is clear that Wake was injured while engaged in activity incident to her service to this country. Accordingly, under *Feres* and its progeny, Wake's sole source of recourse is to those military compensation schemes from which she has already received payment. Thus, the federal character of the government's relationship to its service-members urges a bar to Wake's claims under state tort law.

The second rationale underlying the *Feres* doctrine is the existence of generous statutory disability and death benefits. As the district court observed, Wake was assigned a 100% disability rating from the Department of Veteran Affairs on January 5, 1993, resulting in monthly VA service-connected compensation benefits of approximately $2,000 per month. Accordingly, it is clear that Wake has indeed profited from the generous benefits available to injured servicepersons.

■ Finally, Wake's suit would undoubtedly implicate military judgments concerning the training and supervision of military personnel as well as decisions concerning the maintenance of military vehicles, such as the one involved in this accident. The *Feres* doctrine was intended to avoid civilian court scrutiny of military discipline and policies such as those necessarily implicated by an accident in a military vehicle driven by a military officer. Thus, *Feres'* third rationale urges a bar to Wake's FTCA claim so as to avoid disruption of military order.

### (G) *Conclusion*

In sum, having considered the totality of the germane facts giving rise to Wake's claim, and having considered those facts in light of the rationales underlying the *Feres* doctrine, we conclude that the district court properly applied *Feres* and dismissed Wake's suit for lack of subject matter jurisdiction.

### (2) *Wake's Claims Against Individual Defendants Are Barred by Feres*

■ The law is quite clear that the *Feres* bar is equally applicable to Wake's claims against the individual defendants. The Supreme Court has held that in cases involving military personnel, "no *Bivens* remedy is available for injuries that arise out of or are in the course of activity 'incident to service.'" *Stanley*, 483 U.S. at 684, 107 S.Ct. at 3064. In reaffirming this rule, the Supreme Court has stated:

> Our more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts. The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts

should award money damages against the officers responsible for the violation. Thus, in *Chappell v. Wallace*, 462 U.S. 296[, 103 S.Ct. 2362, 76 L.Ed.2d 586] (1983), we refused—unanimously—to create a *Bivens* action for enlisted military personnel who alleged that they had been injured by the unconstitutional actions of their superior officers and who had no remedy against the Government itself[.]

*Schweiker v. Chilicky*, 487 U.S. 412, 421–22, 108 S.Ct. 2460, 2466–67, 101 L.Ed.2d 370 (1988). Indeed, "'Congress, the constitutionally authorized source of authority over the military system of justice, has not provided a damages remedy for claims by military personnel that constitutional rights have been violated by superior officers. *Any action to provide a judicial response by way of such a remedy would be plainly inconsistent with Congress' authority in this field.'*" *Id.* at 422, 108 S.Ct. at 2467 (quoting *Chappell*, 462 U.S. at 304, 103 S.Ct. at 2367–68) (emphasis in original).

Accordingly, because Wake's claims against the individual defendants in their personal capacities are barred by *Feres*, they were properly dismissed by the district court.

### (3) *Norwich University's Motion to Amend Answer*

Norwich University argues on appeal that the district court (Murtha, *J.*) improperly denied its motion to amend its answer to assert a cross-claim against the United States and against the individual defendants for indemnification. Norwich contends that the district court erred in concluding that (A) the motion was submitted after dismissal of the federal defendants, and (B) any indemnification claim is barred by *Feres*.

### (A) *Timeliness of Cross–Claim*

■ A cross-claim may be asserted only between co-parties. *See*, Fed.R.Civ.P. 13(g); *Cam–Ful Indus. v. Fidelity and Deposit Co. of Maryland*, 922 F.2d 156, 160 (2d Cir.1991). Since all claims against the federal defendants had been dismissed at the time Norwich filed its motion, they were no longer

parties and Norwich therefore could not assert a cross-claim against them. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1247 (2d Cir.1979); *Glaziers and Glassworkers Union v. Newbridge Securities*, 823 F.Supp. 1188, 1190 (E.D.Pa.1993) ("A cross-claim cannot be asserted against a party who was dismissed from the action previous to the assertion of the cross-claim."). Accordingly, the district court properly denied Norwich's motion to amend on this ground.

### (B) *The Cross–Claim Was Barred Under Feres*

■ Claims for indemnification against the United States in the circumstances of this case are barred by the *Feres* doctrine to the same extent as Wake's claims are barred. *See Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058–59, 52 L.Ed.2d 665 (1977) (where National Guard officer injured in an airplane accident sued both United States and manufacturer of plane, and manufacturer asserted cross-claim against the United States for indemnity, Court held that "third-party indemnity action in this case is unavailable for essentially the same reasons that the direct action by [the injured plaintiff] is barred by *Feres* "); *see also In re "Agent Orange" Product Liability Litigation*, 818 F.2d 204, 206–10 (2d Cir.1987) (refusing appellants' invitation to "reject the *Stencel* holding and the *Feres* doctrine upon which it was based").

Similarly, claims for indemnification against individual government officials are barred by the *Feres* doctrine to the same extent as Wake's claims are barred. *See Agent Orange*, 818 F.2d at 209 ("[w]e find no merit in appellants' contention that the protection against liability provided by *Feres* and *Stencel* applies only to the Government and not to its officials").

In sum, because Wake's claims against the United States and the individual defendants were barred by *Feres*, any cross-claim by Norwich University is similarly barred, and any amendment of Norwich University's answer would be futile. *See Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 251 (2d Cir.1994) (leave to amend may not be given where futile).

We have examined Wake's and Norwich University's remaining contentions and find them to be without merit.

### CONCLUSION

For the foregoing reasons, the judgments of the district court are affirmed.