Archie W. **ALLISON**, Sr., Administrator of the Estate of Archie W. Allison, Jr., Deceased, et al., Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

No. 2258.

United States District Court
W. D. Kentucky,
Louisville Division.

Feb. 25, 1969.

George S. Wilson, III, of Wilson & Wilson, Owensboro, Ky., for plaintiffs.

Ernest W. Rivers, U. S. Atty., Louisville, Ky., for defendant.

## MEMORANDUM OPINION, ORDER AND JUDGMENT

JAMES F. GORDON, District Judge.

Archie W. Allison, Jr., a 20-year-old, unmarried, student at the University of Kentucky, attended the summer training camp of the Army's Advanced Course, Reserve Officers Training Corps, of which he was a member, at Indiantown Gap Military Reservation, Pennsylvania, for a 6-week period beginning June 18, 1966. While undergoing this training he became ill and died on July 29, 1966, in a military hospital. A claim was made for the proceeds of the Servicemen's Group Life Insurance provided under 38 U.S.C. § 765 et seq. The claim was denied by the Veterans Administration and this action was instituted by his parents, being statutory beneficiaries of the insurance as next of kin, and by his father as his administrator, against the United States to recover the proceeds of such insurance.

At all times material, young Allison and his parents were residents of Ow-ensboro, Daviess County, Kentucky, which is located within the District of this Court, and this Court is vested with original jurisdiction of this civil action as provided in 38 U.S.C. § 775.

From the record it appears that young Allison entered the "Advanced" course of training in the Reserve Officers Training Corps at the University of Kentucky on September 1, 1965. In order to maintain his status as an Advanced ROTC student, young Allison was required by law (10 U.S.C. § 2107(b) (3)) to join the Army Enlisted Reserves, which he did on the same day. He was assigned a service number and entered into an "ROTC Deferment Agreement" with the Government whereby he agreed to perform and complete his training as an Advanced ROTC student, to accept an officer's commission at the conclusion thereof if one was tendered, to serve in such capacity on full time active duty for two years, and to remain a member of a Regular or Ready Reserve component of the Army until 6 years after he received his commission, participating in up to 48 scheduled drills per year and 17 days annual active duty training for at least 5 of those years. It is noted that this agreement contemplates continued service in the Reserve as inseparable from the obligation. In the event Allison should refuse to perform his military duties in the ROTC he could be, under the agreement, subjected to an extended period of service under his enlistment, or even punished for violation of orders. He was, by virtue of his undertaking with the Government, relieved from being called up under the Universal Military Training and Service Act during the performance of his obligations.

Subsequently, by "Special Orders # 6", signed by James P. Alcorn, Colonel, Armor, Professor of Military Science at the University of Kentucky, young Allison and a number of other Advanced ROTC students were sent to the 1966 ROTC Summer Camp, Annville, Pennsylvania, to arrive on June 18, 1966, and

train until the conclusion of the camp on July 30, 1966. The trip was to be made at Government expense. The purpose of the camp was to train these prospective officers in military skills and leadership. This camp was required training for all Advanced ROTC cadets before receiving their commissions.

Young Allison complied with his orders and performed his training until he became ill on July 15, 1966. He was transferred to the Valley Forge General Hospital at Phoenixville, Pennsylvania soon thereafter, where he died on July 29, 1966 of a brain abscess and meningitis.

After his death, the Government paid his father the military pay for his period of service as "a service member". The vouchers and claim certificates on which these were paid identified young Allison by his Enlisted Reserve Service Number, as did the Internal Revenue Service W–2 form furnished his estate. He was likewise identified by his Enlisted Reserve Service Number on the Army's Interim Report of Casualty dated August 15, 1966, and on the Final Report of Casualty dated August 24, 1966. His duty status at the time of his death was said in these reports to be, respectively, "ACTIVE: On Duty" and "ACTIVE DUTY TRAINING—ON DUTY". The Army's "Official Statement of Casualty" of August 15, 1966 identified him by his Enlisted Reserve Service Number.

After this litigation began, the Army in a "Reply to Correspondence" (April 3, 1968) identified young Allison to the Veterans Administration by his Reserve Service Number. Application Forms for the insurance coverage in question were distributed among the ROTC students prior to their leaving for summer camp but the Government has not produced young Allison's form or, indeed, any of those so distributed.

Under 38 U.S.C. § 765 et seq., a program of group life insurance is provided for the persons described therein. The Administrator of Veterans Affairs has purchased such insurance from the Prudential Insurance Company and his decision as to whether or not an individual is covered by such insurance is binding on that Company.

The Administrator had administratively determined that young Allison was not covered but the Administrator has committed himself, by the Government's answer, to comply with the orders of this Court with respect to notification to the Company that young Allison was covered should this action be determined in favor of the plaintiffs.

Section 767 of the Statute, in applicable part, reads:

"§ 767. Persons insured; amount

(a) Any policy of insurance purchased by the Administrator under section 766 of this title shall automatically insure *any member* of the uniformed services on active duty against death in the amount of $10,000 from the first day of such duty, or from the date certified by the Administrator to the Secretary concerned as the date Servicemen's Group Life Insurance under this subchapter takes effect, whichever date is the later date, unless such member elects in writing (1) not to be insured under this subchapter, or (2) to be insured in the amount of $5,000." (Emphasis ours.)

Section 765 reads as follows:

"§ 765. Definitions

For the purpose of this subchapter—

(1) The term 'active duty' means full-time duty as a commissioned or warrant officer, *or as an enlisted member of a uniformed service under a call or order to duty that does not specify a period of thirty days or less.*

(2) The term 'member' means a person on active duty in the uniformed services in a commissioned, warrant, or enlisted rank or grade.

(3) The term 'uniformed services' means the Army, Navy, Air Force, Marine Corps, Coast Guard, Public

Health Service, and Environmental Science Administration."

The Administrator contends that young Allison was not a "member" under Section 765(2) and that his duty was not "active duty" under 765(1) because he served, according to the Administrator, not as an "enlisted member" but in some other capacity unknown to this Court, inasmuch as such capacity has not been specified or demonstrated by the Administrator.

As young Allison's service was clearly for a period in excess of 30 days, the Administrator's contentions of necessity are reduced to a determination by this Court as to whether or not young Allison performed his service "as an enlisted member" within the meaning of the Act. The Administrator contends that an Advanced ROTC cadet, even though required to be a member of the Enlisted Reserves, is not serving as "an enlisted member" while attending the 6-week summer training session, pointing out that such service is not credited for longevity purposes, but does candidly admit that specific Congressional action was taken to exclude such service for longevity purposes. We do not agree with the Administrator's contentions. It is the opinion of this Court that the plaintiff, like all advanced ROTC students attending the 6-week summer training session, is an "enlisted member of a uniformed service" and therefore covered by the Act.

The Servicemen's Group Life Insurance Act has not been construed by any federal court in regard to the question of coverage of ROTC students and therefore the instant case is one of first impression. To aid the Court in its deliberations, the Government has submitted a copy of H.R. 2910 introduced into the House of Representatives of the 90th Congress on January 18, 1967. This bill, if passed, purports to extend the coverage of the insurance to cadets of the three military academies. A letter to Congress by W. J. Driver, Administrator of the VA, dated August 16, 1967, proposes an amendment to H.R. 2910 as introduced to the effect that coverage should likewise be extended to ROTC cadets while attending field training. However, the contents of this proposed new legislation are in no way binding upon this Court in its interpretation of the Act as it now exists. Indeed, the Court finds more enlightening for the purposes of this determination, the legislative history of the presently existing law rather than proposed additions to it by the Administrator of the VA.

In U. S. Code Congressional and Administrative News, 98th Congress, First Session (1965), page 3232 et seq., there appears an extensive discussion of the background of the presently existing Act. There were then (1965) pending before Congress two proposed bills. The Senate was considering S. 2127 which provided for special indemnity to the survivors of persons who died in a *combat zone*, while the House had under consideration H.R. 10873 providing for a program of group life insurance by private insurance companies for all members of the uniformed services on active duty.

It appears that after the various committee reports had been filed, each of which considered the position of Veterans Administration and Department of Defense, the broader coverage included in the House Bill was substituted for the more restrictive language in the Senate Bill and it was the thus amended Senate Bill which became law. The Court has carefully examined the committee reports as set out in U. S. Code Congressional and Administrative News, and nowhere is there any suggestion that the coverage of "service members" was to be restricted in any way so long as the period of time for which the individual was called to duty exceeded 30 days. To the contrary, the record is replete with broad, all inclusive language defining the individual's coverage.

The House Committee on Veterans Affairs Report # 1003 refers to coverage

of "all members of the uniformed services". W. J. Driver, Administrator of Veterans Affairs, strenuously opposed the restrictive Senate Bill and argued in favor of the broader coverage of the House Bill. His views ultimately prevailed. The Veterans Administration submitted a "detailed analysis" of the two bills, pointing out that the Senate Bill was restricted to persons who died in a combat zone while the proposed House Bill would "automatically insure *each* member of the uniformed service on full-time active duty (under a call or order to duty that does not specify a period of 30 days or less) against death. * * *" The VA analysis told Congress that "*each* member of the uniformed service would be insured * *," and that "*any person* insured under (prior government insurance) * * * may be insured under the bill * * *." The only restriction other than the 30 day duty restriction was that "any person guilty of mutiny, * * * or who, because of conscientious objections, refuses to perform service in the Armed Forces of the United States, or refuses to wear the uniform of such service would forfeit all rights to group insurance". This same W. J. Driver, on September 9, 1965, submitted a letter to Congress to the effect that the House version "would automatically insure *each*-member of the uniformed services. * * *" He also said, "It (the House version) * * * would authorize $10,000 insurance coverage for *all* men in service * * *."

Included in the Congressional report is a letter from Mr. L. Niederlehner, Acting General Counsel for the Department of Defense. He said the Department of Defense "strongly supports the principles contained in H.R. 10873 (which principles were later enacted) because it contributes to the accomplishment of several objectives favored by the Department. First the bill provides an immediate, low cost, group insurance program, available to *all* service personnel * * *" He explained that "*each* member of the uniformed services on active duty for more than 30 days would be eligible". (Emphasis added.)

It is the Court's position that all citizens in the category of young Allison are either enlisted members of a uniformed service or they are not. Congress did not intend that ROTC students attending the 6-week training program constitute a special, hybrid class of citizens who are enlisted personnel for some purposes but not for others. The plaintiff's decedent in this action was required by Congress to enlist before he could take part in the Advanced ROTC program and was under orders for active duty for a period of more than 30 days at the time of his death. If young Allison had refused to perform his military duties while attending the summer camp, he could have been subjected to service for an extended period as a private or subjected to various forms of disciplinary penalties up to and including court martial. It is the opinion of the Court that Congress believed it was passing legislation broad enough to cover every man who served his country for a period exceeding 30 days. Unlike "longevity credit" which Congress took specific action to deny to ROTC students, Congress, which had required the enlistment to begin with, made no technical distinction or exclusion as to the particular service a man *had* to perform to be covered. For the Veterans Administration to narrow the scope of coverage by a technical restriction made subsequent to the Bill's passage, we find to be an arbitrary abuse of administrative discretion and erroneous.

Accordingly, it is ordered and adjudged that the motion for summary judgment of the United States be and the same is hereby overruled, and that the motion for summary judgment of the plaintiffs, Archie W. Allison, Sr. and Mary Allison, be and the same is hereby sustained. It is further ordered and adjudged that the Veterans Administration pay or cause to be paid the face amount of the policy, with interest thereon, to the rightful beneficiaries. It is so ordered.