Archie W. ALLISON, Sr., Administrator of the Estate of Archie W. Allison, Jr., Deceased, Archie W. Allison, Sr. and Mary Allison, his wife, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 19714.

United States Court of Appeals, Sixth Circuit.

May 20, 1970.

Ronald R. Glancz, Dept. of Justice, Washington, D. C., for defendant-appellant; William D. Ruckelshaus, Asst. Atty. Gen., Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., Ernest W. Rivers, U. S. Atty., Louisville, Ky., on the brief.

George S. Wilson, III, Owensboro, Ky., for plaintiffs-appellees; Wilson & Wilson, Owensboro, Ky., on the brief.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

WEICK, Circuit Judge.

The sole issue here is whether a student at the University of Kentucky, who enrolled in the Senior Reserve Officers' Training Corps (ROTC), and who died from natural causes while attending a six-weeks' training course at an ROTC summer camp, was automatically insured for $10,000 against death by Servicemen's Group Life Insurance (SGLI) provided for in 38 U.S.C. § 765 et seq. (Supp. 1970).

The Veterans' Administration construed the SGLI statute as not covering ROTC cadets and denied the claim for the insurance proceeds asserted by the parents of the cadet, who was unmarried.

The District Judge, in a memorandum opinion, held that the statute provided coverage for ROTC cadets, and rendered judgment against the Govern-

ment, 296 F.Supp. 219 (W.D.Ky.1969). We reverse.

On September 1, 1965, Archie W. Allison (Jr.) enrolled in the Senior Reserve Officers' Training Corps (ROTC) advanced training course at the University of Kentucky. As a part of his advanced training program Allison was required to attend summer training camp. 10 U. S.C. § 2109(a) (Supp. 1970). In fulfillment of this obligation Allison was ordered to Indiantown Gap Military Reservation, Pennsylvania, for a six-weeks' training period beginning June 18, 1966 and ending July 30, 1966. While attending training camp, he became ill and died in a military hospital on July 29, 1966, as a result of a brain abscess and meningitis.

Servicemen's Group Life Insurance (SGLI) was provided in a statute enacted by Congress on September 29, 1965, 38 U.S.C. § 765 et seq. Acting under its provisions, the Administrator of Veterans' Affairs purchased a group policy from Prudential Life Insurance Company. Premiums for the insurance are deducted monthly from the serviceman's pay. The Government pays that portion of the premium attributable to insuring each member against the "extra hazard of active duty". 38 U.S.C. § 769(a). The insurance protection terminates one hundred twenty days after the serviceman's separation from service or release from active duty, but the policy may be converted at no extra cost into a regular insurance policy.

The policy, as well as the Regulations adopted by the Administrator (38 C.F.R. 9.22), provide that the determination by the Veterans' Administration as to coverage is conclusive, but original jurisdiction is vested in the District Court of any civil action or claim against the Government founded on the statute. 38 U.S.C. § 775.

Definitions for the purpose of determining coverage under SGLI are provided in 38 U.S.C. § 765:

"(1) The term "active duty" means full-time duty as a commissioned or warrant officer, or as an enlisted member of a uniformed service under a call or order to duty that does not specify a period of thirty days or less.

(2) The term "member" means a person on active duty in the uniformed services in a commissioned, warrant, or enlisted rank or grade.

(3) The term "uniformed services" means the Army, Navy, Air Force, Marine Corps, Coast Guard, Public Health Service, and Environmental Science Services Administration."

A "member of the uniformed services on active duty" is automatically insured against death in the amount of $10,000, unless he elects not to be insured or to be insured for the lesser amount of $5,-000. 38 U.S.C. § 767(a).

Reverting to the statutory definitions (38 U.S.C. § 765), Allison admittedly was not on duty as a commissioned or warrant officer. The question then is whether he was on duty in an "enlisted rank or grade." His status must be determined by an examination of the applicable statutes, including the Student ROTC Program.

The ROTC program was restructured by Congress in the enactment of the Reserve Officers' Training Corps Vitalization Act of 1964, 10 U.S.C. § 2101 et seq. The Senior Reserve Officers' Training Corps was established for "the purpose of preparing selected students for commissioned service in the Army, Navy, Air Force or Marine Corps." 10 U.S.C. § 2102.

The Act contains specific provisions pertaining to travel, medical attendance, admission to military hospitals, and general logistic support for ROTC students. 10 U.S.C. §§ 2109, 2110.

The eligibility requirement for commissioned service is successful completion of either a four-year ROTC training course or a two-year advanced ROTC course. 10 U.S.C. §§ 2106(a), 2101(3). Allison had enrolled in the two-year advanced course.

The requirements for advanced academic and military training for mem-

bers of ROTC are contained in 10 U.S.C. § 2104. One such requirement is that the student "enlist in a reserve component of an armed force under the jurisdiction of the Secretary of the military department concerned for the period prescribed by the Secretary." 10 U.S.C. § 2104(b) (3).

10 U.S.C. § 2105 provides:

"A member of the program who is selected for advanced training under section 2104 of this title, and who does not complete the course of instruction, or who completes the course but declines to accept a commission when offered, may be ordered to *active duty* by the Secretary of military department concerned to serve in his enlisted grade or rating for such period of time as the Secretary prescribes but not for more than two years." (Emphasis added)

It would appear from Section 2105 that the ROTC cadet may be ordered to *active duty as an enlisted reservist* only if he does not complete his course of instruction or declines to accept a commission when offered. The fact that service in ROTC, whether in attending drills in college or in summer camp, is not considered "active service", is made clear by Section 2106(c) which provides that the cadet is "not credited with enlisted service for the period covered by his advanced training."

ROTC students are required to attend summer camp. 10 U.S.C. § 2109(a). They are paid while attending summer camp, not as enlisted reservists, but at the rate provided for cadets or midshipmen at the Service Academies. 37 U.S. C. § 209(c) (Supp. 1970).

 Cadets or midshipmen at the Service Academies are subject to the Military Code. ROTC students are not subject thereto, since they are not included in 10 U.S.C. § 802. ROTC students, however, are given deferment from induction under the Universal Mil-

itary Training and Service Act. 50 U. S.C. App. § 456(d) (1).

When Allison enrolled in the Senior ROTC program he was required to and did sign an "ROTC Deferment Agreement", in which he agreed, among other things, to—

" * * * complete the advanced course, * * * to accept a commission, if tendered; to serve *on active duty* for a period of not less than two years after receipt of such commission."

" * * * if I complete the course of instruction and decline to accept a commission when offered, I may be ordered to *active duty* in my enlisted grade for not more than two years." (Emphasis added)

Allison also signed an "Acknowledgment of Understanding of Service Agreement", in which he agreed:

"So long as I continue enrollment in the advanced course, I will not be required to participate in Reserve training or be ordered to *active duty* for training *or to active duty.* * * *" (Emphasis added)

"I also understand that in computing length of service for any purpose, an officer appointed under the Senior Reserve Officers' Training Program of instruction may not be credited with enlisted service for the period covered by his ROTC training."

Congress has not considered ROTC training [1] or training in the military academies as regular military service. Neither is mentioned in the statute providing for Servicemen's Group Life Insurance, 38 U.S.C. § 765 et seq., or in the legislative history. U.S.Code Cong. & Adm.News, 89th Cong. 1st Sess. 1965, pp. 3232 et seq.

On the other hand, Congress has specifically provided benefits for ROTC students in other statutes. In 10 U.S.C. § 1475 et seq., death benefits are pro-

---

1. About 200,000 students are enrolled in the ROTC program. They would automatically be entitled to life insurance coverage while attending summer camp if the decision of the District Court is correct.

vided equal to six months' pay to beneficiaries of "any member of a reserve officers' training corps (ROTC) who dies while performing annual training duty under orders of more than 13 days, or while performing authorized travel to or from that annual training duty." 10 U. S.C. § 1475(a) (4). This section distinguishes between members of the armed forces and Reserves and members of ROTC.

Congress has provided coverage for Senior ROTC cadets in the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101 et seq. The Government is required to pay compensation where a cadet suffers disability or injury "while performing authorized travel to or from, or while attending *field training* or a practice cruise." (Emphasis added) 5 U.S.C. § 8140(a) (2). Compensation in case of death is provided. 5 U.S.C. § 8133(a). Members of the armed forces, however, are not covered. 5 U.S.C. § 8140(e). The legislative history of the Act indicates a belief on the part of members of Congress that ROTC students are not members of the armed forces and are not eligible for military compensation benefits.

The Senate Committee on Armed Services, in its report on FECA, stated:

"An additional consideration was that ROTC members are civilians and have no military status." (1956 U.S. Code Cong. & Adm.News, p. 3870)

The Administrator of Veterans' Affairs is required to give to each member insured under SGLI a certificate setting forth the benefits to which he is entitled, to whom payable, to whom claims should be submitted, and a summary of the policy provisions. There is no proof that Allison or any other member of ROTC ever received such a certificate. There was no proof that premiums for such insurance were ever deducted from their pay[2].

The District Judge found that "Application Forms for the insurance coverage in question were distributed among the ROTC Students prior to their leaving for summer camp." The evidence on which he relied to support this finding is the response of the Government to plaintiffs' request for admissions, which response was as follows:

"2. In response to paragraph 12 of plaintiffs' request for admissions, [the United States] states as follows:

"The former Sergeant Major of the R.O.T.C. Unit at the University of Kentucky, at the time the defendant was in the R.O.T.C. program, has been interviewed and states that he believes that application forms for insurance coverage were distributed among the students, but that he is unable to remember specifically if the defendant filled out one of the forms. Additionally, investigation on the part of the United States has not revealed any contrary information. Furthermore, the United States has been unable to discover any of the alleged insurance application forms and therefore believes they do not exist.

"THEREFORE, the defendant, United States, is unable to admit or deny truthfully the requested admission and accordingly must deny the admissions sought in paragraph 12."

Since the Government denied the admissions, such denial would hardly support the finding of fact made by the District Judge.

Inasmuch as the insurance coverage was automatic, no application for insurance was necessary. An application served only to designate a beneficiary or to indicate that the applicant either did not want insurance or desired only $5,000 coverage.

■■ But even if application forms were distributed by a Sergeant Major of the ROTC Unit at the University, the

2. The Veterans' Administration has supported bills in Congress to provide coverage for ROTC students while attending summer camp, but Congress has not enacted such legislation.

Government would not be bound to pay insurance benefits not authorized by statute. The Sergeant Major was without authority to distribute application forms to persons not covered by the statute. The Government is not estopped to deny that Allison was insured. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

Although the policy and regulations provide that a determination made by the Veterans' Administration as to coverage is conclusive, nevertheless Congress did vest jurisdiction in the District Court in a civil action founded on the statute.

■ In our opinion, the administrative construction of the statute by the agency entrusted with its execution, is entitled to great weight. As well stated by Mr. Justice White in Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969):

> " * * * [T]he venerable principle that the construction of a statute by those charged with its execution shall be followed unless there are compelling reasons that it is wrong."

Zemel v. Rusk, 381 U.S. 1, 11, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Udall v. Tallman, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); United States v. Madigan, 300 U.S. 500, 57 S.Ct. 566, 81 L.Ed. 767 (1937); Jarvis v. United States Civil Service Comm'n, 382 F.2d 339, 344 (6th Cir. 1967); United States v. Lee, 101 F.2d 472 (6th Cir. 1939).

The SGLI statute as written, with its provisions for premium deductions from pay and for conversion into regular insurance at no extra cost upon the serviceman's separation from service or release from active duty, is hardly adaptable to cover an ROTC student who serves only a few weeks in a summer camp.

The judgment of the District Court is reversed and the cause is remanded with instructions to dismiss the complaint.