# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

_____

```
                              *

                              *
                              *
v.                                      Western District of Missouri.
                              *
                              *

                              *
                              *
```

Submitted:  November 19, 1997

_____

District Judge.

_____

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

Jonathan Brown appeals the dismissal of his medical negligence action against the United States of America. The district court[2] dismissed his suit for failure to state a claim on which relief could be granted, see Fed. R. Civ. P. 12(b)(6), and this appeal followed. Because Brown's injury was sustained incident to military service, Brown's suit falls outside the Federal Tort Claims Act (FTCA). The district court therefore lacked subject matter jurisdiction over this action, and dismissal was appropriate. See Fed. R. Civ. P. 12(b)(1). Accordingly, we affirm.

I.

When this action accrued, Brown was a cadet in the United States Army Reserve Officers' Training Corps (ROTC) at the University of Missouri-Columbia. Brown did not receive an ROTC scholarship, but he did receive financial assistance ($5,000 per year) and a stipend ($100 per month) through his participation in the Department of the Army Scientific and Engineering ROTC Co-op Program. Brown also was enrolled in the United States Army's Senior ROTC advanced training program, through which he hoped to earn a commission as a second lieutenant in the United States Army upon his graduation from college. See 10 U.S.C. § 2106(a) (1994). Before he could enroll in the Senior ROTC advanced training program, Brown was required to enlist in a reserve component of the armed forces, swear an oath of loyalty, and bind himself to serve a term in the United States Army upon graduation. 10 U.S.C. § 2104(b). If for any reason he was disenrolled from the ROTC, Brown would be released to the control of his reserve unit. (See Appellant's App. at 66.) Brown agreed that if he breached his ROTC contract, the Secretary of the Army could immediately order him to perform 24 months of active service as an enlisted man, and that failure to honor his service

_____

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

-2-

ons, whether as an officer or as an enlisted soldier, would subject him t

disciplinary                                                                                                                      t

36.)


                                                                                                        s required periodically

to take and pass an Army Physical Fitness Test or

to immediate active duty as an enlisted soldier.  <u>See</u>                     2105; Appellant's App.

at 36.  During one such

right  hip.                                                                                                                     .

Durin   ROTC training exercises the next day, however, Brown again complained of

                                                            excused with instructions to report to a nearby civilian

hospital     have it examined.  There doctors diagnosed Brown with a muscle strain in

his right qu

again examined, and doctors then discovered that Brown had fractured his right femur.


        Brown                                                                                                                   y

Hospital (Wood Hospital) at For

to                                                                                                                              n

eve            underwent two orthopedic surgeries at Wood Hospital and a third at


        As a result of his injury, Brown failed to

training prog                                                                                                                   a

result, he lost hi

apply                                                                                                                           h

allows federal employees to petition the Department of Labor for the equivalent of

                            <u>See</u> 5 U.S.C. § 8101-8193.   This application me

and Brown began receiving FECA benefits.  Because Brown's injuries

appeared to be both permanent and the result of service-related activities, the Office of Workers' Compensations Programs informed Brown that he should make a claim for benefits from the Department of Veterans Affairs (the VA).[3] Brown did so, and his application to the VA ultimately met with success. On April 1, 1991, Brown began receiving $1,620 per month from the VA for permanent disabilities resulting from service-connected activities. At this time, Brown ceased receiving FECA payments,

---

[3]The Department of Veterans Affairs compensates veterans for service-connected disabilities or death. 38 U.S.C. § 1131. Brown applied for and has been awarded benefits under § 1131 because the Secretary found that Brown is a veteran and has suffered "service-connected" injuries resulting in disability.

A veteran is a person who has "served in the active military, naval, or air service," and who has been discharged under conditions other than dishonorable. 38 U.S.C. § 101(2). Senior ROTC training exercises constitute "active military, naval, or air service." See id. § 101(22)(D) (Senior ROTC training programs of four weeks or greater duration constitute "active duty for training"); id. § 101(23)(C) (Senior ROTC training programs of fewer than four weeks' duration constitute "inactive duty for training"); id. § 101(24) (the term "active military, naval or air service" includes both "active duty for training" and "inactive duty for training"). Brown's participation in inactive duty training constituted "active military, naval or air service," and he is therefore a veteran, having been discharged under honorable conditions.

Veterans receive benefits under § 1131 only for service-connected disabilities—i.e., disabilities incurred or aggravated "in [the] line of duty, in the active military, naval, or air service." 38 U.S.C. § 1131; see also id. § 101(16). Because Brown's injury occurred during a mandatory ROTC Army Physical Fitness Test, the Secretary determined that it was service-connected, and correctly concluded that Brown is entitled to veterans benefits under § 1131.

because the Department of Labor does not pay FECA benefits where VA benefits have been awarded.[4]

On February 2, 1996, Brown filed this action against the United States government, alleging that his permanent disability is the direct and proximate result of the negligence of Wayne E. Janda, M.D., a United States Army surgeon. The United States moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For reasons not explained in the record, the district court treated this motion as one to dismiss for failure to state a claim on which relief could be granted, see Fed. R. Civ. P. 12(b)(6), and dismissed Brown's action on this basis. Brown appeals.

II.

**A.      The Federal Tort Claims Act and the <u>Feres</u> Doctrine**

The FTCA represents the federal government's waiver of sovereign immunity as to claims for money damages for injuries caused by the torts of government employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law

---

[4]Senior ROTC members are considered federal employees and are covered by FECA if they suffer work-related injuries. 5 U.S.C. § 8140(a). However, FECA does not apply when ROTC members are permanently disabled as the result of authorized, scheduled, and supervised Senior ROTC training. <u>See</u> Act of Oct. 14, 1982, Pub. L. 97-306, § 113(c), 96 Stat. 1432, 1432-33 (reproduced in note following 5 U.S.C. § 8140). In such cases, the Veterans' Benefits Act governs the compensation injured cadets will receive, as discussed *supra* in note 3.

the place where the act or omission occurred."  28 U.S.C. § 1346(b), _____ 28

See __ § 2680.

At issue in this _____ <u>Feres</u> doctrine, an exception to the FTCA's waiver of ved out in <u>Feres v. United States</u>

U. _____ <u>Feres</u>, the Court held that notwithstanding the FTCA, the United States remains immune from suits "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."  <u>Id.</u> at 146.  An injury is considered "incident to service" if it arises "because of his military relationship with the Government."  <u>United States v. Johnson</u>, 481 U.S. 681, 689 (1987).  Where injuries are incurred incident to service, dismissal is required.  <u>Miller v. United States</u>, 643 F.2d 481, 491 (8th Cir. 1980) (en banc).

**B.    The Jurisdictional Nature of the <u>Feres</u> Doctrine**

For reasons not stated in its opinion, the district court converted the United States' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) into a motion to dismiss for failure to state a claim under Rule 12(b)(6).  This was procedurally incorrect.  Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' "consent to be sued in any court define that court's jurisdiction to entertain the suit."  <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994) (internal quotations omitted).  The <u>Feres</u> doctrine, which limits the scope of the FTCA's waiver of sovereign immunity, is likewise jurisdictional.  <u>See, e.g.</u>, <u>Selbe v. United States</u>, 130 F.3d 1265, 1266 (7th Cir. 1997); <u>Wake v. United States</u>, 89 F.3d 53, 57 (2d Cir. 1996) ("a question of whether an FTCA claim is barred by <u>Feres</u> is necessarily one of jurisdiction").  Because the sole issue decided by the district court was whether or not the <u>Feres</u> doctrine bars this action—a jurisdictional question—the district court should have viewed the motion as a 12(b)(1) motion for dismissal for want of subject

-6-

jurisdiction.         Wake                                        s
which are material to the jurisdictional is                       Drevlow v. Lutheran
Church

## C.    The Application of the ____ Doctrine to Members of the Senior ROTC Advanced Training Program

Stencel Aero Eng'g Corp. v. United States

Court expl                                    Feres doctrine.  These rationale
focus                                                                 s
and     government, (2) the existence of the Veterans' Benefits Act's no-fault military
com           scheme for service members, and (3) the negative effect on military
ine which second-guessing military orders might produce.  Id.
last major ____ doctrine case, the Court reaffirmed the importance of these three
See _____, 481 U.S. at 688-91.

All      rationales are implicated by Brown's suit, but the second is the most
In denying servicemen the right to sue the government for injuries incurred
Court in Feres
a "simple, certain, and uniform" compensation system for such injuries which is neither
nor "negligible."  340 U.S. at 144, 145.  The Court reasoned that ha
Congress                                                             -
connected dis
these two types of remedy to each other.  __ at 144.  The Supreme Court expanded on
this analysis in _____, writing:

A compensati
purpose: it not only provides a swift, efficient remedy for the injured

serviceman, but it also clothes the Government in the "protective mantle of the Act's limitation-of-liability provisions." Given the broad exposure of the Government, and the great variability in the potentially applicable tort law, the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries.

431 U.S. at 673 (citations omitted). The Court stated that allowing a tort suit in the face of VA benefits would "circumvent this limitation" and "frustrat[e] one of the essential features of the Veterans' Benefits Act." Id. Moreover, in Johnson—the Supreme Court's last word on the subject—the Court reiterated that the Feres doctrine does not contemplate suits for tort damages in the face of VA benefits for service-connected disabilities or death. There the Court wrote:

> [T]he existence of these generous statutory disability and death benefits is an independent reason why the Feres doctrine bars suit for service-related injuries. In Feres, the Court observed that the primary purpose of the FTCA was to extend a remedy to those who had been without; if it incidentally benefited those already well provided for, it appears to have been unintentional. Those injured during the course of activity incident to service not only receive benefits that compare extremely favorably with those provided by most workmen's compensation statutes, but the recovery of benefits is swift and efficient, normally requiring no litigation. The Court in Feres found it difficult to believe that Congress would have provided such a comprehensive system of benefits while at the same time contemplating recovery for service-related injuries under the FTCA. Particularly persuasive was the fact that Congress omitted any provision to adjust these two types of remedy to each other. Congress still has not amended the Veterans' Benefits Act or the FTCA to make any such provision for injuries incurred during the course of activity incident to service. We thus find no reason to modify what the Court has previously found to be the law: the statutory veterans' benefits provide an upper limit of liability for the Government as to service-connected injuries.

481 .S. at 689-90 (internal citations, quotations marks, footnote, and alterations

language, along with the Court's decisions in Stencel Feres, makes

that the scope of the Feres t

which qualifies servicemen for disability and death benefits from the VA.


As discussed above, Brown applied for (and was awarded) VA benefits, claiming

in the line of duty and was thus service-connected. See

, claiming in this action that his injuries

did not arise "incident to service" because he was technically a civ

injury and was admitted to the hospital as a military dependent rather than as an ROTC

Johnson See 481 U.S.


Brown Feres bars suits b

ROTC d

Circuit has so held, see Wake, 89 F.3d at 58-62, and we find its analysis persuasive

See als Morse v. West Feres doctrin

barred suit by ROTC cadet where harm occurred "incident to service").  Senior ROTC

e component of an armed

force, and agree both to complete the course

a term of service in the military following training.  10 U.S.C. § 2104(b).  Breach of this

ent may result in immediate assignment to active duty without a commission

See 10 U.S.C. § 2105; App

mandatory and supervised, and are defined as "active military service" by the Veterans

Act. ___ supra C

members a

service" for purposes of the Feres

Furthermore, as the Second Circuit noted in <u>Wake</u>, several courts have held that <u>Feres</u> bars cadets at military academies and reservists from suing the government for service-related injuries.  <u>See</u> <u>Wake</u>, 89 F.3d at 58-59 (listing relevant cases).  The Eighth Circuit has never been faced with a case involving cadets, but in <u>United States v. Carroll</u>, 369 F.2d 618, 620 (8th Cir. 1966), it held that the <u>Feres</u> doctrine extends to suits by reservists.  Furthermore, in so doing, the court relied heavily on <u>Archer v. United States</u>, 217 F.2d 548 (9th Cir. 1954), <u>cert. denied</u>, 348 U.S. 953 (1955), a case in which the Ninth Circuit held that the <u>Feres</u> doctrine barred an FTCA action brought by a West Point cadet.  <u>See</u> <u>Carroll</u>, 369 F.2d at 621-22.

The Army Physical Fitness Test in which Brown was engaged when he sustained his injury was expressly required by his ROTC contract, (Appellant's App. at 36), and was supervised and directed by the military.  But for his military status, Brown clearly would not have been engaged in the physical fitness test and would therefore not have been injured.  <u>Carroll</u> and <u>Archer</u> make clear that <u>Feres</u> bars reservists and cadets at military academies from suing under the FTCA for injuries sustained during such activities, and we discern no principled reason why Senior ROTC members should be treated differently.  In short, we hold that Brown's initial injury was sustained "because of his military relationship with the government."  <u>See</u> <u>Johnson</u>, 481 U.S. at 689.  Accordingly, the injury occurred in the course of an activity incident to military service and a suit under the FTCA is barred by the <u>Feres</u> doctrine.  <u>Id.</u> at 686, 689; <u>Feres</u>, 340 U.S. at 146.

## D.    The Application of the <u>Feres</u> Doctrine to Medical Negligence Suits

Brown argues that the <u>Feres</u> bar should not apply because his suit alleges medical negligence by the military doctors who treated the initial injury, citing, *inter*

, 38 U.S.C. § 1151, _____, 348 U.S. 110 (1954), and _____ United States, 426 F.2d 1324 (6th Cir. 1970).  We disagree.

Feres

the Supreme Court: _____, Jefferson v. United States     Feres v. United States.  Two of these actions (Jefferson and Grigg) sought recovery for negligent treatment by military surgeons of injuries incurred during active military service.   See Feres, 340 U.S. at 137.  The Court did not hesitate in holding that both of these suits were completely barred by sovereign immunity.  Id. at  146.  This result clearly implies that where a soldier is injured incident to service and requires medical care, Feres treats the initial injury and the medical care as two segments of a single episode.  Because the initial injury "occur[red] in the course of activity" incident to military service, aggravations to the injury sustained during treatment "arise out of" that same service-related activity.  See id. at 146 (both injuries "in the course of" and injuries "arising out of" activity incident to service are excluded from FTCA coverage); cf. Laswell v. Brown, 683 F.2d 261, 267 (8th Cir. 1982) (affirming district court's determination that postdischarge failure to treat service-related injuries constituted continuations of the initial tort and therefore fell within the Feres bar), cert. denied, 459 U.S. 1210 (1983).

Brown argues, in effect, that Grigg and Jefferson are no longer good law, citing 38 U.S.C. § 1151.  Brown argues that section 1151 evidences a general congressional intent to allow claims for medical negligence brought by veterans against military doctors.  We disagree for several reasons.  First, section 1151 is only applicable where a veteran is treated in a VA facility.  At the time of treatment, Brown was not yet a veteran, and he was treated in a military hospital rather than a VA facility.  More fundamentally, section 1151 is clearly intended to extend VA benefits, not to authorize tort suits against the government.  Because veterans who have suffered *non-service-*

-11-

*related* injuries may sue under the FTCA, section 1151 provides that VA benefits shall be abated in such cases to reflect tort damages received by the patient. It says nothing, however, about the applicability of the FTCA in the context of *service-related* activities.

Finally, section 1151 originated in 1958 and has not been substantially altered since 1962. See Act of Oct. 15, 1962, Pub. L. 87-825, § 3, 76 Stat. 950; Act of Sept. 2, 1958, Pub. L. 85-857, § 351, 72 Stat. 1124. In 1987, the Supreme Court wrote, "Congress has recently considered, but not enacted, legislation that would allow service members to bring medical malpractice suits against the Government." Johnson, 481 U.S. at 686 n.6 (citing H.R. 1161, 99th Cong., 1st Sess. (1985); H.R. 1942, 98th Cong., 1st Sess. (1983)). If section 1151 had already accomplished this result, Congress would not have needed to consider such legislation, and the Supreme Court would not have stated in Johnson that "Congress [has not] changed this standard in the close to 40 years since it was articulated[.]" 481 U.S. at 686. We note that Congress still has not changed this standard in the now close to 50 years since Feres.

Allison v. United States, 426 F.2d 1324 (6th Cir. 1970), is similarly irrelevant to Brown's action. The "sole issue" in that case was whether an ROTC cadet was eligible for contractual benefits under certain group life insurance policies. Id. at 1324. The decision does not so much as mention Feres or the FTCA.

Finally, Brown relies on United States v. Brown, 348 U.S. 110 (1954) (hereinafter Brown I), holding clarified, United States v. Johnson, 481 U.S. 681, 687 n.7 (1987). In Brown I, the Supreme Court refrained from applying the Feres bar to a veteran's suit against the government for medical negligence. The Court acknowledged that the veteran's service-related injury was aggravated during an operation at a VA hospital, but because the veteran had been completely discharged from service seven

-12-

years before the operation, the Court found that the causal relationship was too attenuated for the Court to conclude that the subsequent harm caused by the alleged medical negligence arose out of activity incident to military service. See Brown I, 348 U.S. at 112.

The case at hand is very different from Brown I. We are not faced with the follow-up treatment of a veteran in a VA hospital many years after he has left the service, but rather with the initial treatment by Army doctors in a military hospital of injuries sustained during active military service. See 38 U.S.C. § 101(23)(C). Brown was still a member of the Senior ROTC advanced training program when he was treated for the injury he had sustained during required ROTC activities, while the plaintiff in Brown I had been discharged seven years before the allegedly negligent treatment took place. The causal nexus between the initial injury and the alleged aggravation is thus much stronger in the case at hand. Additionally, because Brown's service obligations had not been discharged at the time of the alleged medical negligence, there is a significant likelihood that Brown's suit, if allowed to go forward, would interfere with the military's disciplinary structure. This concern, which has been central to the Supreme Court's analysis in other Feres doctrine cases, see, e.g., Johnson, 481 U.S. at 690-91, was wholly absent in Brown I.

Brown relies heavily on the fact that he was admitted to the Army hospital in his capacity as a military dependant rather than in his capacity as an ROTC cadet. We agree with the district court that, in this case, "this fact is not enough to lift the Feres bar." (Appellant's App. at 166). Any harm caused by medical negligence in this case arose out of Brown's service activities, and Brown is therefore jurisdictionally barred from bringing suit to recover in tort for these injuries.

III.




A true copy.


Attest: