**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 13 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANGELA MORSE; STACY HANDLEY,

      Plaintiffs-Appellants,

v.

TOGO WEST, as Secretary of the Army;
JAMES LIEDLE; RUSSELL DANIS,

      Defendants-Appellees.

No. 97-1386
(D.C. No. 97-D-579)
(District of Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Circuit Judge, **HENRY**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

---

This case involves the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b),

2671-2680.

On March 21, 1997, Angela Morse and Stacey Handley filed a complaint in the

United States District Court for the District of Colorado, naming as defendants Togo

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

West as Secretary of the Army, James Liedle and Russell Danis.[1]  In that complaint the parties were identified as follows: Morse and Handley are both citizens of Colorado residing in El Paso County, Colorado; West was the Secretary of the Army ("Secretary"); Liedle was a Colonel in the United States Army and stationed at Fort Carson, Colorado; and Danis was a cadet in the Reserve Officer Training Corp ("ROTC") program at the University of Colorado at Colorado Springs, Colorado.  Under the heading of "General and Jurisdictional Allegations," the plaintiffs alleged that the district court had subject matter jurisdiction under the FTCA and the Fifth and Fourteenth Amendments.  The plaintiffs went on to allege that each was at all pertinent times a cadet in the ROTC program at the University of Colorado at Colorado Springs, Colorado, and that at all pertinent times Liedle and Danis "were operating under the color of law and their authority as representatives of the Army's Reserve Officer Training Corp program at the University of Colorado at Colorado Springs."

The first claim for relief was Morse's claim against the Secretary under the FTCA. In that claim Morse alleged that while she was participating in and completing an ROTC course of study as a cadet at the University of Colorado at Colorado Springs, she was subjected to acts of gender bias and sexual harassment, including unwanted sexual

---

[1]During the pendency of this proceeding, Robert M. Walker replaced Togo West as Secretary of the Army, and was accordingly substituted for West.  Defendants Liedle and Danis were never served with process, and did not otherwise appear in any proceeding in the district court, nor in this court.

- 2 -

advances, by a fellow cadet, Russell Danis, and others, in the ROTC program, and that she suffered retaliation when she reported the acts of sexual harassment to her superiors. Such acts of gender bias and sexual harassment, according to Morse, "constitute personal injury to the Plaintiff, and therefore [are] violations of the Federal Tort Claims Act," for which she sought "both economic and non-economic" damages.

In the second claim for relief, Handley asserted her claim against the Secretary under the FTCA. The allegations of sexual harassment and the like in the second claim paralleled those alleged in the first claim, although Handley identified Liedle, as well as Danis, and unidentified "others" as being the perpetrators thereof.[2]

In the third claim for relief, Morse asserted a claim under "Section 1983/5th and 14th Amendments." She stated that the "acts of Defendant Russell Danis and others constituted an intentional deprivation of Plaintiff Morse's civil rights and denial of due process under color of Federal law." In a fourth claim, Handley set forth a claim which paralleled the third claim. In a fifth claim, Morse asserted a claim based on outrageous conduct and intentional infliction of emotional distress by Danis. In a sixth, and last claim, Handley also asserted a claim for outrageous conduct and malicious prosecution by Liedle, Danis and others.

In response to the complaint, the Secretary filed a motion to dismiss, setting forth

---

[2]In the second claim for relief, Handley also mentioned that defendant Liedle had initiated a "civil lawsuit" against her.

three grounds for dismissal: (1) under Fed. R. Civ. P. 12(b)(1), the district court lacked "subject matter jurisdiction over tort claims under the *Feres* doctrine, because such claims are brought by military personnel against military personnel incident to military service"; (2) plaintiffs' claims against the Secretary based on constitutional torts fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6); and (3) the claims of malicious prosecution also fail to state a claim under 28 U.S.C. § 2680(h). The plaintiffs thereafter filed a response to the Secretary's motion to dismiss, in which counsel resisted the Secretary's motion to dismiss as it related to the first four claims in the complaint. As to the fifth and sixth claims, counsel stated that those particular claims were "directed against defendants other than Togo West, and need not be addressed by this brief." Counsel attached to his response to the Secretary's motion to dismiss certain correspondence, reports and statements made by the two plaintiffs. To that response, the Secretary filed a reply.[3]

It was on this state of the record that the district court granted the Secretary's motion to dismiss the first four claims in the complaint, which, as indicated, were the only

---

[3]The plaintiffs also filed a separate action against the Regents of the University of Colorado, alleging, *inter alia,* claiming that they reported the acts of sexual harassment here complained of to the University and that it did not adequately respond thereto. The district court granted a 12(b)(6) motion to dismiss that particular claim, as well as certain other claims of the plaintiffs. On appeal, we reversed that part of the district court's order which held that the plaintiffs had failed to state a valid claim under Title IX of the Educational Amendments of 1972, compiled at 20 U.S.C. §§ 1681-1688 and remanded the case for further proceedings. *Morse v. Regents of the University of Colorado,* 154 F.3d 1124 (10th Cir. 1998).

claims directed at the Secretary, the fifth and sixth claims being directed at Danis and Liedle, and others, but not the Secretary. *Morse v. West,* 975 F.Supp. 1379 (D. Colo. 1997).

In granting the Secretary's motion to dismiss the plaintiffs' first and second claims for relief based on the FTCA, the district court relied on the so-called *Feres* doctrine as enunciated in *Feres v. United States,* 340 U.S. 135 (1950). In so doing, the district court rejected counsel's suggestion that *Feres* only applied if plaintiffs were on "active duty" in the military at the time of their "injuries," and that, since they were not on active military duty, *Feres* was inapplicable. The district court also concluded that any acts of harassment "were incident to military service," and that the plaintiffs' FTCA claims were barred under the *Feres* doctrine. *Morse v. West,* 975 F.Supp. at 1381. In this regard, the district court spoke as follows:

> Here, I find that the alleged incidents of harassment were incident to military service since they occurred during the Plaintiffs' involvement with the ROTC program and its military cadets and officials. Indeed, Plaintiffs admit in their complaint that the claims arose during their service in the ROTC program. This holding is consistent with one of the main reasons for application of the *Feres* doctrine, namely, the fear of damaging the military system. *Burkins*, 865 F.Supp. at 1493. Here, as in *Burkins*, the claims of Plaintiffs would require "delving into the acts of the Defendants and the investigation surrounding Plaintiffs' injury" which would, "in all likelihood require judicial second-guessing of military orders." *Id*. at 1494-95. Thus, application of *Feres* to Plaintiffs' claims is warranted. The Second Circuit reached a similar result as to ROTC students in *Wake v. United States*, 89 F.3d 53 (2nd Cir. 1996). Accordingly, I find that Plaintiffs'

first and second claims against West must be dismissed.

*Id.* at 1381-82.

As concerns the plaintiffs' third and fourth claims for relief based on intentional violations by Danis and Liedle of plaintiffs' rights under the Fifth and Fourteenth Amendments, the district court concluded that those claims, insofar as they related to the Secretary, were also barred because "the military enjoys an immunity to *Bivens* claims that is coextensive with its *Feres* immunity," *Id.* (citing *Maddick v. United States,* 978 F.2d 614, 615 (10th Cir. 1992)). We are in general accord with the district court's analysis of the matter.

Certain matters are not in dispute. It is agreed that we are only concerned with plaintiffs' claims as they relate to the Secretary, since Danis and Liedle were never served with process. It is also agreed that plaintiffs' claims against the Secretary, acting in his official capacity as Secretary of the Army, are, in reality, claims against the United States. It is further agreed that the United States enjoys governmental immunity from the type of claims here asserted by the plaintiffs, unless the United States has waived its immunity. In this latter regard, the plaintiffs assert that the United States has waived its immunity under the FTCA, and that in connection with the plaintiffs' third and fourth claims against the Secretary the district court "inappropriately applied" *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). We are not in accord with either of these two propositions.

We should first look at the factual basis for plaintiffs' claims. The record indicates

that the basis for plaintiffs' claims against Danis are based on alleged sexual harassment occurring during an ROTC program maintained at the University of Colorado at Colorado Springs, Colorado, by the United States Army. It would appear that the basis for plaintiffs' claims against Liedle, who was a Colonel in the United States Army and stationed at nearby Fort Carson, was that he, as an administrator of the ROTC program, did not take proper remedial measures after learning of the harassment charges.

As indicated, under the authority of *Feres v. United States,* supra, the district court concluded that plaintiffs' claims did not come within the ambit of the FTCA. We agree.

*Feres* involved three cases. Feres perished in a fire in army barracks while on active service in the United States Army. His executrix sued the United States, alleging negligence in the Army's maintenance of the barracks. Jefferson, while in the Army, underwent an abdominal operation by military personnel. Eight months later, after discharge, he had a second operation in which a towel marked "Medical Department U.S. Army" was removed from his stomach. He brought suit against the United States for negligence. In the third case, Griggs' executrix brought suit against the United States, alleging that Griggs while on active duty in the United States Army met death because of negligent and unskillful medical treatment by army surgeons. In *Feres*, the Second Circuit affirmed the district court's dismissal of the action. *Feres v. United States,* 177 F.2d 535 (2nd Cir. 1949). In *Jefferson,* the Fourth Circuit affirmed the district court's holding that the FTCA did not charge the United States with liability. *Jefferson v. United States,* 178 F.2d 518 (4th Cir. 1949). In

*Griggs,* the Tenth Circuit reversed the district court and held that the complaint in that case stated a viable cause of action under the FTCA. *Griggs v. United States,* 178 F.2d 1 (10th Cir. 1949).

On certiorari, the Supreme Court affirmed in *Feres* and *Jefferson*, but reversed in *Griggs.* In so doing the Supreme Court spoke as follows:

> We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law. We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command. Accordingly, the judgments in the *Feres* and *Jefferson* cases are affirmed and that in the *Griggs* case is reversed.

*Feres,* 340 U.S. at 146.

Counsel first argues that *Feres* does not apply to the present case because neither plaintiff was an "active member of the military." In *Wake v. United States,* 89 F.3d 53 (2nd Cir. 1996), the Second Circuit held that the *Feres* doctrine applied to an enlisted inactive member in the Naval ROTC program at Norwich University. In *Brown v. United States,* 151 F.3d 800, 805 (8th Cir. 1998), the Eighth Circuit recently held that *Feres* bars suits by ROTC cadets for injuries sustained during ROTC activities, citing the *Wake* case. And in *Quintana v. United States,* 997 F.2d 711 (10th Cir. 1993), we held that the *Feres* doctrine barred an

action against the United States by an injured service member who was on reserve status and was not on active duty.

Alternatively, counsel argues that if the *Feres* doctrine applies to the plaintiffs, the injuries did not "arise out of or . . . in the course of activity incident to service," as required by *Feres.* We disagree. Indeed, in their complaint, the plaintiffs alleged that while "participating and completing a so-called ROTC course of study," injuries were sustained during their "tenure as an ROTC cadet." The alleged "tort" in the instant case clearly occurred in "activity incident to service."[4] Thus, plaintiffs' third and fourth claims against the United States are subject to the same infirmity as their FTCA claims against the United States. The military enjoys an immunity to *Bivens* claims that is co-extensive with its *Feres* immunity. *United States v. Stanley,* 483 U.S. 669, 684 (1987) and *Maddick v. United States,* 978 F.2d 614, 615 (10th Cir. 1992).[5]

---

[4]In an unpublished opinion we held that the claim of a former member of the United States Air Force based on a pattern of sexual harassment was "incident to service" and hence her FTCA claim was barred by *Feres. Corey v. United States,* 124 F.3d 216 , (Table), 1997 WL 474521, *cert. denied*, 118 S.Ct. 865 (1998).

[5]In an unpublished Order and Judgment, the United States District Court for the Southern District of New York in *Callis v. Shannon,* 1994 WL 116007, dismissed the claim of a cadet in an ROTC program that she had been the victim of sexual harassment by her superior. In that case the plaintiff claimed, *inter alia,* that there was a tort violation of the 14th Amendment. In dismissing that claim, the court stated that "[t]he United States has not waived its sovereign immunity for constitutional torts." As concerns an FTCA claim, that court spoke in footnote 2 as follows:

> Plaintiff cannot sustain a tort claim against the Army because the *Feres* doctrine bars such a claim since the actions taken against plaintiff, by the terms of her complaint, were "incident to military service" as they occurred while she was a

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

_____

ROTC cadet.